Joseph E. CURLOTT, Jr., Homer B. Powers, Leonard E. Small, James T. Bailey, Joseph E. Hunt, Wilbur B. Crouse, John M. Howard, Gerald K. Morrell, Individually and as representatives of their class, Mary Lou Johnson, Mary Jane Soper, Doris J. Dickfoss, Gerald L. Stennette, Katie M. Morehouse, Iris H. Harp, Betty J. Christensen, Carolyn L. Jent, Rite B. Helleck, Montyne Y. Harris, Barbara J. Berg, Individually and as representatives of their class, Joyce A. Moon, Dorothy I. Johnson, Wanda S. Jones, Carol B. Caine, Margaret R. Milewski, Sandra M. Ridihalgh, Kathy A. Curtis, Bonnie E. Barlow, Cheryl D. Bixby, Susan D. Taylor, Vicki L. Graig, Individually and as representatives of their class, Plaintiffs,

v.

Robert E. HAMPTON, Ludwig J. Andolsec and Georgianna Sheldon as Individuals and in their representative capacities as Commissioners of the Civil Service Commission of the United States of America, Bob Oliver, as an Individual and in his capacity as Acting Area Manager for the United States Civil Service Commission, and the Civil Service Commission of the United States of America.

No. A77–10 Civil.

United States District Court,
D. Alaska.

Oct. 7, 1977.

Robert H. Wagstaff, Wagstaff & Middleton, Anchorage, Alaska, for plaintiffs.

James L. Swartz, U. S. Atty., Anchorage, Alaska, Robert H. Moll, Senior Trial Atty., U. S. Civil Service Commission, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

von der HEYDT, Chief Judge.

THIS CAUSE comes before the court on cross-motions for summary judgment. The issues presented by these motions relate to changes in the method of calculating the cost-of-living allowance (COLA) for certain employees in Alaska. Some discussion of the nature and source of the COLA is necessary for an understanding of these issues.

The COLA was established in 1948 by President Truman in Executive Order 10,-000. That order is codified at 5 U.S.C. § 5941. Recognizing that the cost of living was substantially higher in certain foreign areas and territories President Truman in E.O. 10,000 established a system whereby certain employees of the federal government in those areas received compensation in addition to their base pay. Alaska, although now a State, was and is included in E.O. 10,000.

The critical language in question in this case is found in Section 205(b)(2) which states in pertinent part:

The Civil Service Commission shall . . . in fixing the Territorial cost-of-living allowance pursuant to such subsection, make appropriate deductions when quarters or subsistence, commissary or other purchasing privileges *are furnished* at a cost substantially lower than the prevailing local cost. (Emphasis added.)

In late 1976 defendants adopted an interpretation of the words "are furnished" which would allow a reduction in the COLA when the enumerated privileges were received as the result of past employment by the federal government unrelated to the present position for which the COLA is being paid. The COLA was also reduced for persons presently employed by the federal government who had access to the enumerated privileges because of the present or past federal employment of their spouses. The essence of defendants' definition and construction of "are furnished" is that whenever the federal government furnishes the privilege, that a reduction in the COLA is appropriate whether or not the privilege is furnished as the result of the individual's present employment. Put in plaintiffs' terms, the government has equated "are furnished" with "have access to."

The named plaintiffs purport to represent three classes.[1] The members of the first class are retired military persons who are entitled to the privileges as the result of past employment by the United States Armed Forces and who presently are employed by the federal government. The COLA of these persons is reduced in their present employment. The second class is composed of presently federally employed spouses of retired military persons. These spouses who are entitled to the privileges because of their relationship with a retired military person, have had their present COLA cut. The final class is those persons who are federally employed and are married to active duty military personnel.

---

1. The court notes that these classes have not yet been certified and that this procedural defense might have been interposed to plaintiffs' motion for summary judgment. *Haas v. Pittsburg National Bank,* 60 F.R.D. 604, 612 (W.D. Penn.1973), Aff'd in part, rev'd in part on other grounds 526 F.2d 1083 (3d Cir. 1975); *Rickel v. Levy,* 370 F.Supp. 751, 760 (E.D.N.Y.1974); *Peritz v. Liberty Loan,* 523 F.2d 349, 352–55 (7th Cir. 1975); *But see Sprogis v. United Air Lines,* 444 F.2d 1194, 1201 (7th Cir. 1974); *Nash v. Boeing Co.,* 63 F.R.D. 451 (E.D.Penn. 1974). However, defendants' apparently have chosen not to assert this line of opposition. *See Katz v. Carte Blanche,* 496 F.2d 747, 762 (3d Cir. 1974).

### "Are Furnished"

It is the contention of all of these classes that the words "are furnished" must mean "are furnished as the result of the person's present federal employment." They maintain that the defendants' definition is plainly erroneous. Although plaintiffs' interpretation appears to be the more logical and appropriate construction of the language and intent of E.O. 10,000 this court does not sit to reweigh every determination of this type made by an agency.

Defendants have cited *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), and its progeny for the proposition that the court must accord some deference to an administrative interpretation. *See Knebel v. Hein,* 429 U.S. 288, 97 S.Ct. 549, 50 L.Ed.2d 485 (1977). Plaintiffs concur in this general statement of the law but attempt to fit this case into one of the exceptions to the general rule.

■ Plaintiffs first assert that the plain meaning rule must be employed to overturn the agency's interpretation. The court cannot agree. While the definition of "furnished" adopted by plaintiffs is a reasonable interpretation of the meaning of the word so is the definition adopted by defendants. In such a case deference to the administrative interpretation requires the court to uphold the agency's decision. *Knebel v. Hein,* 429 U.S. 288, 97 S.Ct. 549, 50 L.Ed.2d 485 (1977).

Plaintiffs attempt to distinguish *Knebel, supra,* on the basis that it involved generalized remedial legislation. They contend that the present case is distinguishable. They point to the fact that there is a specific Presidential mandate permitting deductions only if the privileges are furnished at a cost substantially lower than prevailing costs. Thus, they contend the legislation is not remedial nor generalized, but rather the issue is interpretation.

This distinction, although unclear to the court, may undercut to some extent the applicability of *Knebel* but it does not alter the meaning of the term "furnished" nor does it blunt the force of the rationale behind *Udall v. Tallman, supra.* The court is not to substitute its judgment for that of the agency if the agency's interpretation is reasonable. As to the plain meaning of "furnished" the court must defer to the agency.

The next attempt to circumvent the general rule of deference is based on the rationale that the agency's interpretation conflicts with the intent of the Executive Order. For this proposition plaintiffs cite *U. S. v. Larionoff,* 431 U.S. 864, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977). The court, of course, agrees with plaintiffs' general statement of the law but cannot agree that it applies to the present case.

Plaintiffs have presented a compelling case to demonstrate that their interpretation is more equitable than that of the agency. What they have failed to do, however, is present any evidence which substantiates their position that the intent of Executive Order 10,000 has been frustrated by the agency. Here again the court must defer.

■ As a final attack on the rule of deference the plaintiffs attempt to demonstrate that one individual in the agency, without the aid of legal advice, was responsible for the adoption of the definition here in question. While this may be true, it also is true that the interpretation was approved by the Civil Service Commission. This court is not empowered to peer behind the scenes to observe the source of an agency's action when determining the weight to be accorded an agency decision.

In another line of attack the plaintiffs assert that Executive Order 10,000 has not been followed. They claim this deficiency in two aspects of the agency's action.

E.O. 10,000 requires the Commission to "consider the relative consumer price levels in the area and in the District of Columbia . . . ." Plaintiffs contend that the Commission should compare those with the enumerated privileges in Washington, D.C., to those same classes of persons in Alaska. By comparing the general population of Washington, D.C. to the population in Alaska

which has access to the facilities defendants are accused of comparing "apples and oranges." In considering whether to redefine "furnished" the Commission might well have looked at this somewhat unfair comparison. The simple answer to the argument, however, is that E.O. 10,000 itself directs the Commission to consider the relative consumer price levels and in a separate provision allows for a deduction when the privileges are furnished. Thus, the Commission was merely following the letter of the law.

In a second prong of attack based upon the procedure established by E.O. 10,000 the plaintiffs assert that the Commission has not given "due consideration to the differences in goods and services available" and "to the manner of living of persons employed in the areas concerned in positions comparable to those of United States employees in the areas    . . ." 5 U.S.C. § 5941, Sec. 205(b). As to the first portion of the requirements it is clear that the statistics, questionnaires, and studies, although somewhat dated and perhaps based on a skewed sample, satisfy this requirement.

■ The second portion presents a more troublesome issue. The plain meaning of the quoted phrase apparently requires the Commission to compare the manner of living of non-federal employees to federal employees who have comparable positions in the areas concerned. Thus there should be a federal/nonfederal study in Anchorage concerning the manner of living. Defendants at oral argument asserted that the Bureau of Labor Statistics survey of 1959–1961 fulfilled this requirement. That survey, however, and the standards based upon it, utilize only Washington, D.C. weighting. Carney Deposition, p. 57, ln. 1–4. In addition, the living pattern questionnaire upon which some updating apparently has occurred was sent only to Federal employees. There apparently is no study as required by Executive Order 10,000.

Without such a study there may be a violation of Executive Order 10,000. The court, however, does not pass upon that issue. The portion of E.O. 10,000 requiring this study requires the Commission to consider it "in designating places under section 205(a).    . . .". Thus, this study is to be used to determine whether any COLA is paid in a particular area. It is not used to fix the amount of COLA paid.

The claim for relief does not assert any objection to the fact that Alaska was designated as a place where the cost of living was substantially higher and none of these plaintiffs have been harmed by that designation. Hence, they lack standing to assert this particular claim. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

*Due Process*

■ Plaintiffs assert that prior to the adoption of the new construction of the term "furnished" that they should have been afforded the opportunity to comment upon the proposal. In a long line of cases the Supreme Court has developed a tripartite test to aid in the quest for the resolution of this issue.

Identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, or additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Smith v. Organ. of Foster Families For Equality & Reform*, 431 U.S. 816, 848, 97 S.Ct. 2094, 2112, 53 L.Ed.2d 14 (1977).

In the instant case the private interest is the substantial reduction in salaries which are paid to these employees. These salaries previously were based upon a definition of furnished which apparently meant "furnished by the employing agency," and there apparently was some expectation that this

definition would continue. This first criterion sufficiently triggers due process considerations. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1974); *See generally,* Davis, *Administrative Law of the Seventies,* § 6.01–7—§ 6.01–9.

Secondly, while the court certainly cannot predict the influential value of the comments and information received by the agency, it is clear that a decision of this sort could be influenced by some understanding of the realities involved. This case, however, falls within a different class from those cases wherein an individualized determination is necessary. Here, where the issues involve a class there is some need to impose limits to keep the proceeding manageable. *Thompson v. Washington,* 162 U.S.App.D.C. 39, 53, 497 F.2d 626, 640 (1973). In addition the issue involved here involves interpretation rather than the resolution of factual issues. While disputed or undisputed facts may influence the agency's interpretation they need not necessarily be resolved prior to a decision. Hence, the court will require a procedure similar to the A.P.A. rule-making process [2] an opportunity to make written presentations. *Thompson v. Washington, supra,* 162 U.S.App.D.C. at 54, 497 F.2d at 641.

Finally, the procedure adopted herein will not seriously impair the agency when it makes such an alteration of interpretation and any reduction based upon such a change in interpretation must await the comment procedure.[3]

Defendants attempt then to meet the due process argument by citation to *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). The plaintiff in *Arnett* asserted the right to a due process hearing prior to removal from Civil Service employment for cause. Writing for three members of the Court, Mr. Justice Rehnquist in

the plurality opinion held that when a statute confers a right and proscribes the same right that a person may not accept the benefits of the statute and at the same time attack the restrictions upon it.

Without regard to the fact that the precedential value of *Arnett* is weak, the present case is distinguishable in a material respect. In *Arnett* the language complained of was contained in the very sentence conferring the benefit. Accepting the reasoning of the plurality it was held improper to bifurcate a sentence to accept, yet attack it.

In the present case the language "are furnished" is contained in the same general section conferring the benefit but plaintiffs here do not attack the general proposition that the COLA benefits may be reduced when the privileges "are furnished." Rather the attack here is on the administrative interpretation of "are furnished" and that interpretation is not contained in the statute. Thus, the reasoning of *Arnett* does not apply and a hearing is required as previously set forth.

Various other contentions are raised by the plaintiffs. These issues, however, may be altered or moot following the hearing as required by this memorandum and the court declines to pass upon them at the present time.

Accordingly IT IS ORDERED:

1. THAT the motions for summary judgment are granted and denied in conformity with this memorandum.

2. THAT this cause is remanded to the agency for further action in conformity with this memorandum. A judgment may be entered by the clerk.

3. THAT all other presently pending motions are denied as moot.

---

2. It should be noted that it is the Constitutional considerations of due process and not the A.P.A. which dictates this result. *See* 5 U.S.C. § 553(b)(3)(A).

3. The court, of course, does not pass upon the issue of whether there must be an opportunity for a hearing prior to every COLA cut, but rather the issue is limited to the situation in which an alteration of interpretation creates the decrease.