Charles A. BUSCHMANN, et al.,
Plaintiffs-Appellants,

v.

Richard S. SCHWEIKER*, Secretary of the United States Department of Health, Education and Welfare, Defendant-Appellee.

No. 80–3231.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1981.

Decided May 3, 1982.

Rehearing Denied Aug. 25, 1982.

---

* Pursuant to Fed.R.App.P. 43, Richard S. Schweiker, Secretary of the Department of Health, Education and Welfare, is substituted as appellee for the original appellee, Patricia Harris.

Michael H. Marcus, Mult. Cty. Legal Aid Serv., Portland, Or., argued, for plaintiffs-appellants; Amy Veranth, Portland, Or., on brief.

Larry K. Banks, Social Sec. Div., Dept. of Health & Human Ser., Baltimore, Md., argued, for defendant-appellee; Judith D. Kobbervig, Asst. U. S. Atty., Portland, Or., Thomas S. Martin, Social Security Div., Dept. of Health & Human Ser. Baltimore, Md., on brief.

Before KILKENNY and GOODWIN, Circuit Judges, and PRICE**, District Judge.

GOODWIN, Circuit Judge.

Charles Buschmann and a class consisting of himself and all present and future Supplemental Security Income ("SSI") recipients in Region X appeal from a judgment of the district court upholding the validity

** The Honorable Edward Dean Price, United States District Judge for the Eastern District of California, sitting by designation.

1. 20 C.F.R. § 416.1125(d) provides in pertinent part:

> (d) *Valuation of support and maintenance for individuals in household situations.* When an eligible individual ... lives in a household (i.e., is not in an institution), ... any support and maintenance received in kind but not received in lieu of cash wages ... is unearned income. In such cases effective with payments for December 1974, the maximum value of such support and maintenance is presumed to be that amount which, for an individual or a couple with no other income, would result in payment at two-thirds of the applicable payment standard; i.e., the value is presumed to be one-third of the payment standard, plus the exclusion applicable to unearned income. This presumption will be applied in determining the benefits payable unless it is rebutted by the individual's establishing that the current market value of such support and maintenance, less any payment he makes therefor, is lower than the presumed value...."

2. 42 U.S.C. § 1382a(a)(2)(A) provides in pertinent part

> (2) unearned income means all other income, including—
> (A) support and maintenance furnished in cash or kind; except that (i) in the case of any individual (and his eligible spouse, if any) living in another person's household and receiving support and maintenance in kind from such person, the dollars amounts otherwise applicable to such individual (and spouse) as specific in subsections (a) and (b) of section 1382 of this title shall be reduced by 33⅓ percent in lieu of including such support and maintenance in the unearned income of such individual (and spouse) as otherwise required by this subparagraph...."

3. 5 U.S.C. § 553 provides:

of 20 C.F.R. § 416.1125(d).[1] Buschmann raises two questions on appeal:

1. Does 20 C.F.R. § 416.1125(d) exceed the Secretary's authority under 42 U.S.C. § 1382a(a)(2)(A) of the Social Security Act?[2]
2. Can this regulation apply to any period prior to its publication as a final regulation on July 7, 1978, because the Secretary failed to comply with the Administrative Procedures Act, 5 U.S.C. § 553?[3]

> "(a) This section applies, according to the provisions thereof, except to the extent that there is involved—
> (1) a military or foreign affairs function of the United States; or
> (2) a matter relating to agency management or personnel or to public property, loans, grants, benefits or contracts.
> (b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereto in accordance with law. The notice shall include—
> (1) a statement of the time, place, and nature of public rule making proceedings;
> (2) reference to the legal authority under which the rule is proposed; and
> (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.
> Except when notice or hearing is required by statute, this subsection does not apply—
> (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure or practice; or
> (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.
> (c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection
> (d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—

The facts are not in dispute. Charles Buschmann had been receiving $42.30 a month in SSI benefits. He lived alone in a house owned by his son for which he paid $80 a month rent. The Secretary determined that the current market rental value of the dwelling was $145 a month. Under 20 C.F.R. 416.1125(d) this generated $65 a month of unearned income to Buschmann, thus terminating his continued eligibility for SSI benefits.

Buschmann filed a class action claiming (1) that the regulation exceeded the Secretary's authority, and (2) that the regulation could not apply to any period prior to the date of its final publication. The district court granted the Secretary's motion for summary judgment on these issues, but reversed the Secretary's determination of current market rental value as not being supported by substantial evidence.

Buschmann appeals the district court's decision. The Secretary does not appeal.

### 1. *Validity of the Regulation*

■ Buschmann argues that 20 C.F.R. § 416.1125(d) violates SSI's objective of guaranteeing minimum subsidies because the regulation counts as "income" savings that are not actually available to the recipients to meet their basic needs. This court upheld the validity of regulation 416.1125(d) in *Antonioli v. Harris*, 624 F.2d 78 (9th Cir. 1980):

"This regulation is clearly 'reasonably related to the purposes of enabling legislation,' *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 280–81, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969), because it tends to equalize the status of SSI recipients who live in quarters owned by friends or relatives, paying little or no rent, and those who must obtain housing in the marketplace. See *Mourning v. Family Publications Service*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1600, 36 L.Ed.2d 318

(1) a substantive rule which grants or recognizes an exemption or relieves a restriction;
(2) interpretative rules and statements of policy; or

(1973); *National Welfare Rights Organization v. Mathews*, 533 F.2d 637, 645 (D.C. Cir.1976)." 624 F.2d at 81.

■ *Antonioli* also disposes of Buschmann's argument that the imputed income was unavailable to him:

"The crux of appellant's challenge to the decrease in benefits is that he did not have any unearned income. We disagree. Although appellant assumed some financial obligations, he did not pay rent to his father. He thus fared better and had more resources available than an SSI recipient forced to locate and finance housing in the open market...." 624 F.2d at 80. *Accord: Usher v. Schweiker*, 666 F.2d 652 (1st Cir. 1981); *Kimmes v. Harris*, 647 F.2d 1028 (10th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 400, 70 L.Ed.2d 214.

Buschmann also claims that this regulation should be invalidated in that it is "arbitrary and capricious." The decisions of *Antionilo* and *Kimmes* foreclose that claim. It should also be noted that the interpretation of an administrative regulation by the officers or agency charged with its administration is to be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). The interpretation of regulation 416.1125(d) is not plainly erroneous.

Thus we find that the assessment of in-kind support does not violate the purpose of the Social Security Act and is not arbitrary or capricious.

### 2. *Noncompliance with the Administrative Procedures Act*

■ A regulation is invalid if the agency fails to follow procedures required by the

(3) as otherwise provided by the agency for good cause found and published with the rule.
(e) Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."

Administrative Procedures Act, 5 U.S.C. § 553.[4] *U. S. Steel Corp. v. U. S. Environmental Protection,* 595 F.2d 207, 210 (5th Cir. 1979); *Anderson v. Butz,* 550 F.2d 459, 462 (9th Cir. 1977); *Hotch v. United States,* 212 F.2d 280 (9th Cir. 1954); *Carter v. Blum,* 493 F.Supp. 368, 372 (S.D.N.Y.1980); *Kelly v. United States Department of Interior,* 339 F.Supp. 1095, 1100–1101 (E.D.Cal. 1972); *City of New York v. Diamond,* 379 F.Supp. 503, 518 (S.D.N.Y.1974).

Section 553(b) and (d) requires the agency to publish a substantive rule in the Federal Register no less than 30 days before the rule's effective date, and to provide an opportunity for public comment. Section 553(b)(B) allows an exception "if the agency has 'good cause' to believe the process would 'be impracticable, unnecessary, or contrary to the public interest' and if the agency publishes reasons for thinking so along with the rules in question." *Western Oil & Gas v. United States E.P.A.,* 633 F.2d 803, 810 (9th Cir. 1980). The Secretary did not comply with 5 U.S.C. § 553 when he proposed the presumed maximum value (PMV) now in dispute as an amendment to regulation 416.1125. Regulation 416.1125(d) was published for the first time in the Federal Register on January 29, 1974. It was preceded by the following preamble:

> "Notice is hereby given that the rules contained in the following notices of proposed rule making and proposed regulations will be applied *in order to administer the supplementary security income program during the period from January 1, 1974 when the new program became effective,* until final regulations are adopted." (Emphasis added.) 39 F.R. 3674.

However, the PMV approach now in dispute was not published until October 20, 1975, when the Secretary published a proposed amendment to 416.1125. These new rules were given a limited retroactive effect:

> "The rules set forth in 416.1125(b)(2), (d), and (3) of the proposed amendment pertaining to support and maintenance provided to individuals living in households will be applied by the Social Security Administration with respect to supplemental security income benefits payable for *months beginning with December 1974,* until a final regulation is adopted." (Emphasis added.) 40 F.R. 48937–8.

■ The Secretary relies on the "good cause exception" in Section 553(b)(B) for the proposition that the agency could waive the 30-day notice rule. In order to avail itself of the "good cause exception" the agency must determine "that compliance with the 30-day requirement is either impracticable, unnecessary or contrary to the public interest." *Kelly v. United States Department of the Interior, supra,* 339 F.Supp. at 1101. It must then include this finding and a short statement of reasons with the new regulations. *Id.* The Secretary did not make such a finding in this case and did not include the reasons with the regulations he published on October 25, 1975.

The district court held that the preamble to the regulations published on January 29, 1974, indicated that all rules would be retroactive on publication because "the rule was designed to implement a statute which was in effect twenty-nine days earlier." "Good cause" was the need to "administer the supplementary security income program" which was already in effect.

■ The district court's analysis was too generous. The preamble of January 29, 1974, never mentioned the PMV approach adopted in October 1975. The PMV approach was a new method of calculating eligibility. The preamble does not mention any method of calculating eligibility. Furthermore, the Secretary made the disputed

---

**4.** The Administrative Procedures Act is applicable to rulemaking by the Secretary of Health and Human Services. Although 5 U.S.C. § 553(a)(2) would have exempted the rulemaking procedure now in dispute, the then Secretary of Health, Education and Welfare, in a policy statement dated January 28, 1971, (36 F.R. 2532), required all agencies and offices in his department to utilize the public participation procedures of § 553. The Secretary does not contest his legal obligation to comply with § 553 procedures.

provision of the amendment retroactive to December 1974 and not to the original effective date of January 1, 1974. The requirements of Section 553(b)(B) are clear. The finding and the reasons for waiving the 30-day notice must be published *with the proposed rule.* The preamble of January 29, 1974, cannot validate a rule published almost two years later.

The cases cited by the Secretary do not support the proposition that failure to comply with the requirements of § 553(b)(B) is insignificant. *Nader v. Sawhill,* 514 F.2d 1064, 1068 (Em.App.1975), and *People of the State of California, State Lands Com'n v. Simon,* 504 F.2d 430 (Em.App.1974), involve government price controls. The announcement of future controls could cause market distortions. *U. S. Steel v. U. S. Environmental Protection, supra,* 595 F.2d at 214, n.15. No such exigency is involved here.

"However, we warn that repeated technical noncompliance will not be tolerated. Moreover, we stress categorically that our resolution of the procedural issues herein is founded upon the unique circumstances in which *this* price increase was formulated. Assuming less calamitous circumstances, we fully expect that any future decisions will take the utmost advantage of full and open public comment." *Nader v. Sawhill,* 514 F.2d at 1069.

Other cases have indicated that the good cause exception should be interpreted narrowly, *U. S. Steel Corp. v. U. S. Environmental Protection, supra,* 595 F.2d at 214; *Kelly v. United States Dept. of Interior, supra,* 339 F.Supp. at 1102, so that the exception will not swallow the rule. *Nader v. Sawhill, supra,* 514 F.2d at 1068. The notice and comment procedure promotes public input into agency rulemaking:

"Voiding the present regulations on what at first blush appears to be a technicality is not as pointless as it may seem. We believe that the 30-day notice rule serves an important interest, the right of the people to present their views to the government agencies which increasingly permeate their lives. The interchange of ideas between the government and its citizenry provides a broader base for intelligent decision-making and promotes greater responsiveness to the needs of the people, especially in cases such as this where Congress has only roughed in its program. Indeed, a meaningful pre-publication dialogue between plaintiffs and the Secretary may have even avoided this lawsuit. In our opinion, therefore, the 30-day comment period should be closely guarded and the 'good cause' exception sparingly used. See *Texaco, Inc. v. Federal Power Commission,* 412 F.2d 740 (3rd Cir. 1969)." *Kelly v. United States Dept. of the Interior,* 339 F.Supp. at 1102.

The notice and comment procedures in Section 553 should be waived only when "delay would do real harm." *U. S. Steel v. U. S. Environmental Protection, supra,* 595 F.2d at 214. The good cause exception is essentially an emergency procedure. This court would not permit the Environmental Protection Agency to rely solely on statutory deadlines to satisfy the good cause exception in enacting clean air standards. *Western Oil & Gas v. United States E.P.A.,* 633 F.2d 803, 810–813 (9th Cir. 1980). *Accord: State of N. J. v. U. S. Environmental Protection,* 626 F.2d 1038 (D.C.Cir.1980); *U. S. Steel Corp. v. United States Environmental Protection, supra, Sharon Steel Corp. v. Environmental Protection Agency,* 597 F.2d 377 (3d Cir. 1979).

"When substantive judgments are committed to the very broad discretion of an administrative agency, procedural safeguards that assure the public access to the decision-maker should be vigorously enforced. This we believe is sound policy. . . ." *Western Oil & Gas v. United States E.P.A.,* 633 F.2d at 813.

These procedural safeguards are just as important for social security recipients as they are for powerful corporations. There was no emergency that justified dispensing with the notice and comment procedure in this case. Certainly, the need to administer the supplemental security income program cannot satisfy the good cause exception. If the Secretary could waive the notice and comment procedure in this case, any agency

358

could waive Section 553 by saying that it was necessary to do so.

■ Title 5 U.S.C. § 706 provides that the court must take "due account" of the rule of "prejudicial error" in reviewing agency actions. The Secretary can rely on harmless error only "when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached." (Citation omitted.) *Braniff Airways v. C.A.B.*, 379 F.2d 453, 466 (D.C.Cir.1967), cited in *U. S. Steel Corp. v. United States Environmental Protection, supra*, 595 F.2d at 215.

Applying this principle to this case is somewhat complicated. Plaintiffs and the Secretary agree that regulation 416.1125(d), published in final form on July 7, 1978, is valid and is identical to the interim regulation challenged in this case. The Secretary argues that his failure to follow the Administrative Procedures Act did not prejudice Buschmann or the class.

■ In light of the importance of the notice and comment procedure embodied in Section 553 and the failure to comply, we hold that the interim amendment to regulation 416.1125(d) (the PMV approach) was invalid from December 1974 until the promulgation of the final rule on July 7, 1978. We remand this case to the agency for recalculation of plaintiffs' supplemental income benefits during that period.

The judgment is affirmed in part and reversed in part.

KILKENNY, Circuit Judge, concurring and dissenting:

I concur in that part of the majority's opinion upholding the basic validity of the regulation in question. However, I cannot agree with its holding that the interim regulation is invalid due to noncompliance with the Administrative Procedures Act.

As stated by the majority on the first page of the opinion, *the facts are not in dispute.* Consequently, the lower court's decision was actually a decision on the merits despite its use of summary judgment to dispose of the case.

Before us is a situation where the plaintiffs and the Secretary agree that the Regulation, 20 CFR 416.1125(d), published in final form on July 7, 1978, *is valid and is identical* to the interim regulation challenged in this case. The district court held that in light of these facts, the plaintiff had not shown any prejudice. To permit a party to prevail where no harm has been demonstrated is nothing short of allowing litigants to use the federal courts to complain about things that in no way affect them. Courts were not established for such a purpose. True enough, the courts must see to it that administrative agencies follow correct rule-making procedures. However, in my view, this does not mean that no harm or prejudice need be shown before a defect in the rule making process may become the foundation for a lawsuit.

*United States Steel Corp. v. Environmental Protection Agency*, 595 F.2d 207 (CA5 1979), a case relied upon by the majority is consistent with this theory. I quote:

"Nor can the Agency rest on the doctrine of harmless error. While that doctrine has been held applicable to review of agency actions, and has statutory sanction in the APA, it is to be used only 'when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of the decision reached.' *Braniff Airways v. CAB*, 379 F.2d 453 (CADC 1967). Here the Agency's error plainly affected the procedure used, *and we cannot assume that there was no prejudice to the petitioners.* Absence of such prejudice must be clear for harmless error to be applicable." 595 F.2d at 215. [Emphasis added]

Unlike the court in *U. S. Steel*, this panel need not assume anything. The district court clearly held that the defect was not prejudicial. The facts being undisputed, this ruling is subject to the "clearly erroneous" rule. F.R.Civ.P. 52(a); *CIR v. Duberstein*, 363 U.S. 278, 291, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960); *Lungren v. Freeman*, 307 F.2d 104, 105, 115 (CA9 1962). My review of the record discloses nothing sufficient to disturb this finding.

I would affirm the judgment of the lower court in full.