Susan ALANIZ, et al.,
Appellants/Cross-Appellees,

v.

OFFICE OF PERSONNEL
MANAGEMENT, et al.,
Appellees/Cross-Appellants.

Nos. 83–921, 83–967.

United States Court of Appeals,
Federal Circuit.

March 5, 1984.

Robert G. Mullendore and Michael Rorick, Anchorage, Alaska, argued, for appellants/cross-appellees; Roger W. DuBrock, Anchorage, Alaska, on brief.

Sanda M. Kayden, Washington, D.C., argued, for appellees/cross-appellants; J. Paul McGrath, Asst. Atty. Gen., and J. Christopher Kohn, Director, Washington, D.C., on brief.

Before DAVIS, KASHIWA and BENNETT, Circuit Judges.

BENNETT, Circuit Judge.

Both parties appeal from a judgment of the United States District Court for the District of Alaska, the Hon. James A. von der Heydt, Chief Judge, presiding, 545 F.Supp. 1182 (1982), holding (1) the district court's jurisdiction to review the 1980 and 1981 reductions in the cost-of-living allowance (COLA) for federal employees working in the Anchorage, Alaska area is not precluded by the section of the Administrative Procedure Act (APA) providing that no review is permitted where agency action is committed to agency discretion by law, 5 U.S.C. § 701(a)(2) (1982); (2) the Office of Personnel Management's (OPM) methodology for calculation of COLA rates is not arbitrary, capricious or contrary to law under the applicable standard of review, 5 U.S.C. § 706(2)(A) (1982); (3) OPM failed to comply with the notice and comment procedures of the APA for rulemaking, 5 U.S.C. § 553 (1982); and (4) a remand to OPM is therefore required for reconsideration consistent with section 553 of the APA, during which time the rate reductions shall remain in effect.[1] Susan Alaniz, et al. (plaintiffs) appeal from all the above holdings except the determination that OPM's changes in the COLA methodology and its setting of rates constituted rulemaking, and OPM appeals on this issue alone. We *affirm in part, reverse in part,* and *remand.*

## BACKGROUND

This class action suit is brought on behalf of federal employees whose rates of basic pay are set by statute and whose workplace is located within 50 miles of Anchorage, Alaska. Plaintiffs challenge both substantive and procedural aspects of OPM's administration of the COLA program. COLA is a federal program supplementing the basic pay of federal employees stationed in designated areas outside the continental United States or in Alaska. The allowance is based on living costs substantially higher than in the District of Columbia, and is subject to a 25-percent statutory maximum. The applicable law governing the COLA program consists of a statute, 5 U.S.C. § 5941(a) (1982), Executive Order No. 10,000, *reprinted in* 5 U.S.C. § 5941 at 760–62, and OPM regulations, 5 C.F.R. §§ 591.201–.213 (1982).

Plaintiffs' challenge to OPM's administration of the COLA program was precipitated by reductions in the COLA rate in the Anchorage area from the 25-percent maximum in 1979 to 20 percent in 1980 and 17.5 percent in 1981. Plaintiffs filed suit in the district court shortly after the later reduction in the COLA rate. The district court certified the case as a class action. Jurisdiction of the district court was invoked under 5 U.S.C. § 702 (1982), 28 U.S.C. § 1331 (Supp. V 1981), and 28 U.S.C. § 1346(a)(2) (Supp. V 1981). Jurisdiction over this appeal is provided for by the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 127, 96 Stat. 25, 37 (to be codified at 28 U.S.C. § 1295(a)(2)), which gives this court exclusive jurisdiction over an appeal where the jurisdiction of the district court is based in whole or in part on 28 U.S.C. § 1346.

## APPLICABLE LAW

The statutory authorization for the payment of a COLA is 5 U.S.C. § 5941(a), which states in relevant part:

(a) Appropriations or funds available to an Executive agency, except a Government controlled corporation, for pay of employees stationed outside the continental United States or in Alaska whose

---

1. Only that part of the decision below that is challenged on appeal will be discussed.

rates of basic pay are fixed by statute, are available for allowances to these employees. The allowance is based on—

(1) living costs substantially higher than in the District of Columbia;

. . . .

The allowance may not exceed 25 percent of the rate of basic pay. Except as otherwise specifically authorized by statute, the allowance is paid only in accordance with regulations prescribed by the President establishing the rates and defining the area, groups of positions, and classes of employees to which each rate applies.

For purposes of this litigation, the applicable section of Executive Order No. 10,000 reads as follows:

SEC. 205. ADDITIONAL LIVING COST COMPENSATION. (a) The Office of Personnel Management shall from time to time subject to applicable law, (1) designate places in the Territories where it determines that living costs are substantially higher than in the District of Columbia, (2) fix for each place so designated an additional rate or rates of compensation to be paid by reason of such higher living costs pursuant to section 207 of the Act, and (c) [sic] prescribe such further regulations, governing such compensation, as may be necessary. Additional compensation so fixed is hereafter in this Part referred to as "Territorial cost-of-living allowance."

(b) The Office of Personnel Management shall, (1) in designating places under section 205(a) hereof, consider the relative consumer price levels in the area and in the District of Columbia, and give due consideration to the differences in goods and services available and to the manner of living of persons employed in the areas concerned in positions comparable to those of the United States employees in the areas, and (2) in fixing the Territorial cost-of-living allowance pursuant to such subsection, make appropriate deductions when quarters or subsistence, commissary or other purchasing privileges are furnished at a cost substantially lower than the prevailing local cost . . . .

The relevant portions of OPM's regulations governing the COLA program will be set out in the following discussion.

## DISTRICT COURT JURISDICTION

■ On appeal, OPM contends that the district court erred in assuming jurisdiction over this action because section 701(a)(2) of the APA prohibits review of OPM's determination of the COLA rate. 5 U.S.C. § 701(a)(2) precludes judicial review where "agency action is committed to agency discretion by law." The Supreme Court has stated that this is a very narrow exception and interpreted it so that a court is deprived of jurisdiction only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971) (citation omitted). *See also Strickland v. Morton,* 519 F.2d 467, 468 (9th Cir.1975).

The district court held that it had jurisdiction because (1) the law governing the COLA program is phrased in mandatory, rather than permissive, language, *see Southern Railway Co. v. Seaboard Allied Milling Corp.,* 442 U.S. 444, 455, 99 S.Ct. 2388, 2394–95, 60 L.Ed.2d 1017 (1979); and (2) there is law to apply, as the COLA statute, Executive order and regulations all contain legal standards for reviewing OPM's actions. 545 F.Supp. at 1185.

OPM's main challenge to the district court's holding on jurisdiction is that there is no legal standard contained in the applicable law against which OPM's methodology for COLA rates may be measured. In support of its contention that section 701(a)(2) precludes review, OPM cites *Gifford v. Small Business Administration,* 626 F.2d 85 (9th Cir.1980) (SBA's determination of whether to provide managerial counseling and aid is clearly committed to agency discretion), *Strickland v. Morton,* 519 F.2d 467 (Secretary of the Interior's denial of applications for homestead entry is committed to agency discretion), and *Ness Investment Corp. v. United States Department of Agriculture,* 512 F.2d 706 (9th Cir.1975)

(Secretary's denial of a special use permit for use of national forest land for construction of a recreational facility is committed to agency discretion).

We agree with the district court that review of OPM's COLA methodology is not precluded by section 701(a)(2). As pointed out by the court, there is no indication that Congress intended that OPM's actions in this area be unfettered by judicial scrutiny. Unlike the present case, the cases cited by OPM all involved instances where the court found clear congressional intent that judicial review was precluded. *Gifford,* 626 F.2d at 86; *Strickland,* 519 F.2d at 469; *Ness,* 512 F.2d at 715. Furthermore, in all of the cases cited, the actions complained of implicated an agency's daily administration of its discretionary powers, rather than the legality of a set administrative standard. The agency action challenged here is more closely analogous to the situation in *National Treasury Employees Union v. Campbell,* 589 F.2d 669, 678 (D.C.Cir.1978), where the court held that section 701(a)(2) did not preclude review of the agency's setting of insurance rates where the relevant statute provided that rates "reasonably and equitably reflect the cost of the benefit provided."

We disagree with OPM's contention that there is *no* law to apply in this case. As the district court pointed out, section 205(a) of Executive Order No. 10,000 states that OPM *"shall . . .* fix for each place so designated an additional rate or rates of compensation to be paid by reason of such higher living costs" (emphasis added). Admittedly, the relevant statute, Executive order, and regulations do not dictate the specific methodology to be employed by OPM in determining the rate of the allowance to be paid. The applicable law, however, mandates that the COLA rate be based on "living costs substantially higher than in the District of Columbia." 5 U.S.C. § 5941(a). In addition, section 205(b)(1) of Executive Order No. 10,000 lists two other factors, the differences in goods and services available and the nonfederal manner of living, the relevance of which to plaintiffs' claims will be discussed later. Plaintiffs assert that

OPM's methodology does not accurately reflect these standards.

Upon review of the applicable law and in the absence of any clear indication that review is precluded, we conclude that OPM is given broad, but not unlimited, discretion to establish the methodology for setting COLA rates. Accordingly, we hold that the district court was correct in its determination that review of OPM's COLA methodology is not precluded by section 701(a)(2).

## SUBSTANTIVE CHALLENGES TO OPM'S ADMINISTRATION OF THE COLA PROGRAM

Plaintiffs' main challenge to OPM's COLA methodology is that, in determining the COLA rate, OPM failed to consider two factors, the differences in goods and services available and the local nonfederal manner of living. The government asserts that these factors need only be considered in designating places for the COLA program, and the district court agreed. 545 F.Supp. at 1187.

Section 205 of Executive Order No. 10,000 lists three factors relating to the COLA program:

(b) The Office of Personnel Management shall . . . in designating places under section 205(a) hereof, consider the relative consumer price levels in the area and in the District of Columbia, and give due consideration to the differences in goods and services available and to the manner of living of persons employed in the areas concerned in positions comparable to those of the United States employees in the areas . . . .

The district court held that the factors listed in the Executive order, by its terms, apply only to the designation of the places where the COLA is authorized to be paid, and not to the determination of the rate to be paid. *Id., see also Curlott v. Hampton,* 438 F.Supp. 505, 508 (D.Alaska 1977) (von der Heydt, C.J.), *rev'd on other grounds, Curlott v. Campbell,* 598 F.2d 1175 (9th Cir.1979). The district court went on to state:

Even assuming an ambiguity exists in the order regarding OPM's use of the factors; it is recognized that an agency has presumed expertise in interpreting executive orders charged to its administration, and judicial review must accord great deference to the agency's interpretation. *Udall v. Tallman,* 380 U.S. 1, 16–17 [85 S.Ct. 792, 801–02, 13 L.Ed.2d 616] ... (1965); *Kester v. Campbell,* 652 F.2d 13, 15 (9th Cir.1981).

545 F.Supp. at 1187.

█ Although we certainly agree with the district court's observation that an agency's interpretation of an Executive order is entitled to great deference, it is not clear from the opinion on what basis the court concluded that OPM's litigating position constituted an official interpretation of the order. It is clear that no deference is due to an agency "interpretation" fashioned for the purposes of litigation. *See Morabito v. Blum,* 528 F.Supp. 252, 269–70 n. 17 (S.D.N.Y.1981), *citing Ames v. Merrill Lynch, Pierce, Fenner & Smith,* 567 F.2d 1174, 1177 n. 3 (2d Cir.1977). Presumably the court below relied on OPM's practice of not considering the two factors at issue in its COLA methodology.[2] OPM's "interpretation" for purposes of this litigation, however, is that the three factors set out in the Executive order apply only to the designation of places, not the fixing of rates. We are aware of no evidence in the record that indicates that OPM uses these factors in its designation of places entitled to receive a COLA. OPM's "interpretation" is based on the premise that the applicable law differentiates between the criteria to be applied to places and rates. OPM, however, offers no evidence in support of the contention that the agency, in practice, applies a different set of criteria to the designation of places than that used for the fixing of rates. We conclude, therefore, that there is no official agency "interpretation" that supports OPM's position regarding the criteria to be applied to COLA rates.

2. *But see* OPM's assertion, discussed later in this section, that its methodology *does* take

Plaintiffs assert that the district court erred in its conclusion that the factors listed in the Executive order apply only to the designation of places where the COLA is to be paid. According to plaintiffs, the three factors listed serve to define the term "living costs," which govern both the designation of places and the setting of rates for those places. In section 205(a) of the Executive order it states that OPM shall (1) designate places where it determines that living costs are substantially higher than in the District of Columbia, and (2) fix an additional rate of compensation to be paid "by reason of *such* higher living costs" (emphasis added). Thus, plaintiffs assert, the three factors that are explicitly applicable to the designation of places also govern the rate of compensation to be paid.

Plaintiffs also assert that OPM's interpretation leads to "nonsensical results," as it is unreasonable to assume that the President would provide such specific guidance for the general decision of where to pay the COLA and then disregard that guidance in the more specific decision of how much COLA is to be paid. The district court acknowledged that plaintiffs' interpretation "make[s] good sense," but went on to state that "plaintiffs have not provided the court with any persuasive authority in support of their proposition." 545 F.Supp. at 1187 n. 17.

Our difficulty with the district court's holding is that there is no attempt in the opinion to reconcile OPM's interpretation in this litigation with the following OPM regulation:

5 C.F.R. § 591.207 *Places and rates at which allowances shall be paid.*

Allowances are authorized to be paid in consideration of relative living cost differences between an area covered and the Washington, D.C., area and differences in goods and services available, and the manner of living of persons employed in the area concerned in positions comparable to those of United States employees

into consideration these two factors.

in the area. A listing showing the places and rates at which allowances shall be paid is set out as Appendix A to this subpart and is incorporated in and made part of this section.

The clear meaning of the regulation is that the factors enumerated in the Executive order apply both to places *and* rates relating to the payment of the COLA. The regulation is entitled "Places and rates at which allowances shall be paid," the three factors are set out in the context of the payment of the COLA, and the final sentence again specifies "places and rates at which allowances shall be paid" without any inference that a different set of criteria is to be applied to each determination. The district court, however, merely held that OPM's interpretation, as reflected in its practice of not considering two of the above factors in setting rates, is reasonable in light of the Executive order, with no discussion of the reasonableness of this interpretation in light of OPM's *official* interpretation of the order as reflected in its regulations.

OPM asserts that plaintiffs' reliance on 5 C.F.R. § 591.207 is "misplaced," as that section lists a set of criteria which OPM may consider, but that it is not required to do so. In support of this assertion, OPM emphasizes that the regulation states that allowances are "authorized to be paid," and thus, presumably, the considerations listed are purely discretionary. We do not find OPM's argument to be convincing. There is nothing in the language of the regulation that supports an interpretation to the effect that OPM should consider the enumerated factors unless it decides not to. More important, the regulation evidences OPM's of-

ficial interpretation of the order, and that interpretation supports plaintiffs' assertion that the order did not intend to differentiate between places and rates in the application of the factors listed.

■ We hold that OPM must consider, for purposes of fixing the amount of COLA paid, all three factors set out in section 205 of Executive Order No. 10,000 and 5 C.F.R. § 591.207, consisting of (1) relative living cost differences between the allowance area and the Washington, D.C. area, (2) the differences in goods and services available, and (3) the manner of living of persons employed in the area concerned in positions comparable to those of federal employees in the area.

Plaintiffs' four specific challenges to OPM's methodology are set out in the district court's opinion, 545 F.Supp. at 1189–90, and will not be repeated here. Based on its conclusion that OPM need not consider the above criteria in setting rates, the district court held that plaintiffs' challenges must fail as OPM was under no obligation to consider the differences in goods and services available and the local nonfederal manner of living, a holding we now reject.[3]

■ On appeal, OPM asserts that even if it is required to consider all three factors in setting rates, the methodology utilized properly takes this criteria into consideration.[4] *But see Curlott v. Hampton,* 438 F.Supp. at 508 ("There apparently is no [OPM] study [concerning the nonfederal manner of living] as required by Executive Order 10,000.") The district court, however, did not reach OPM's assertion that its methodology was lawful if the above crite-

---

**3.** Only one of plaintiffs' four challenges to the COLA methodology, i.e., that OPM's measurement of relative consumer price levels is arbitrary and capricious, does not implicate OPM's alleged failure to consider all of the relevant factors. Concerning this issue, we agree with the district court's conclusion that "[w]hile the methodology may not be a model of equity, it nonetheless is properly based on the difference in living costs between Anchorage and Washington, D.C." and thus is not violative of section 706(2)(A). 545 F.Supp. at 1189. All of plaintiffs' other challenges to the methodology,

however, involve to some extent the assertion that OPM failed to consider all of the relevant factors. *See* discussion at 545 F.Supp. at 1189–90.

**4.** As plaintiffs point out, OPM's assertion is contradicted by its earlier assertion in its brief that "OPM has for 30 years consistently used these two factors [differences in goods and services and the nonfederal manner of living] *only for designating places,* and not for fixing COLA rates." (Emphasis in original.)

ria were applicable. We will not decide this issue in the first instance, particularly since OPM's alleged use of the three factors is essentially a factual inquiry. We therefore remand to the district court for consideration of OPM's contention that its methodology properly accounts for the factors set out in Executive Order No. 10,000 and 5 C.F.R. § 591.207.

## OPM'S ALLEGED FAILURE TO COMPLY WITH THE NOTICE AND COMMENT REQUIREMENTS OF THE APA

■ OPM appeals from that portion of the district court's opinion that held that OPM's actions regarding the setting of COLA rates constituted rulemaking subject to the notice and comment requirements of the APA, 5 U.S.C. § 553. 545 F.Supp. at 1191–92. OPM's actions in this area were made subject to the rulemaking requirements of the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 92 Stat. 1111, 5 U.S.C. §§ 1103(b), 1105 (1982). It is undisputed that if the rulemaking requirements were applicable to OPM for the years in question, OPM failed to follow the notice and comment procedures. The district court held that two of OPM's actions were subject to the notice and comment requirements: (1) OPM's changes in the COLA methodology after the enactment of the CSRA; and (2) the 1980 and 1981 formulations of the COLA for the Anchorage area. Each of these holdings will be discussed in turn.

We have little difficulty in concluding that the district court correctly held that OPM's changes in the COLA methodology fit within the APA's definition of rulemaking. Section 551(5) (1982) defines rulemaking as "agency process for formulating, *amending,* or repealing a rule." (Emphasis added.) A rule is defined as:

the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency

and *includes* the approval or *prescription for the future of rates, wages,* corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing[.]

Section 551(4) (emphasis added).

We agree with the district court's conclusion that:

These changes [modifications of the criteria in the COLA methodology based on more recent data, changes in consumer preference, and changes in sociological patterns] can be characterized as legislation on an administrative level. They were intended to have a future effect on federal employees receiving COLA compensation in the Anchorage area. In addition, the court has no problem perceiving the changes as amendments to a prescription for wage rates. Based on the foregoing, OPM's modifications of the COLA methodology constitute rulemaking. *See Batterton v. Marshall,* 648 F.2d 694, 704–05 (D.C.Cir.1980).

545 F.Supp. at 1191.

OPM asserts that the district court erred in that any changes in the COLA methodology for the years in question should be characterized as "merely minor housekeeping matters," and thus are not amendments to a rule. OPM further asserts that no change in the methodology has occurred; rather, the changes reflect OPM's established methodology which takes into consideration the most recent consumer expenditure data compiled by the Bureau of Labor Statistics.

OPM's characterization is contradicted by a trial exhibit entitled "Statement on the Preparation of Cost of Living Allowance Indexes" issued by OPM. In that exhibit, the following changes in the COLA methodology are described as "*[m]ajor improvements* introduced this year [1980]" (emphasis added): (1) updated weights for expenditure categories; (2) updated list of items priced; (3) expanded housing sample; and (4) separate pricing of maintenance and repair items. We agree with the district

court that these changes are *not* "routine corrections or refinements" which do not impact or alter the methodology, as OPM claims. *See Batterton v. Marshall,* 648 F.2d at 710. Contrary to OPM's assertion, only the first two of the above changes are stated to reflect recent survey results; the third and fourth changes are based on OPM's opinion that the changes in methodology more accurately measure the items priced. In any event, the "fact" that a set methodology is designed to reflect new survey results [5] does not alter the possibility that significant changes in the methodology may result. In effect, OPM argues that since it has a policy of changing the methodology to reflect recent survey results, any change in the methodology is thereby exempt from the notice and comment requirements. Like the district court, we do not find OPM's argument to be persuasive.

In the alternative, OPM asserts that even if the changes in the methodology may be labeled as "rulemaking," its actions are exempt from the notice and comment requirements by virtue of the exception for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A) (1982). Specifically, OPM asserts that the changes constitute interpretative rules, as "OPM has not altered its methodology, it merely refined and clarified it."

We agree with the district court that the changes in the COLA methodology do not fall within the meaning of an interpretative rule.

The modifications at issue are not interpretative. They were not meant to explain an existing rule. *See Batterton v. Marshall,* 648 F.2d at 704; *Curlott v. Hampton,* 438 F.Supp. at 509, n. 2, *rev'd on other grounds,* 598 F.2d 1175 (9th Cir. 1979). They also do not represent merely an agency's view on interpretation of a statute. *See American President Lines, Ltd. v. Federal Maritime Commission,* 316 F.2d 419, 421 (D.C.Cir.1963).

545 F.Supp. at 1191. The changes at issue here do not serve an advisory function, as they implement OPM's delegated responsibility to set the COLA rates, and thus tangibly affect the amount of compensation due a federal employee in the areas covered by the COLA program.[6] Furthermore, as stated earlier, we reject OPM's assumption that the changes in COLA methodology do not alter its operation as contrary to the evidence. We conclude that OPM's changes in the methodology constituted legislative rulemaking that does not fall within any of the statutory exceptions to the notice and comment requirements of the APA.

OPM also challenges the district court's holding that the 1980 and 1981 rate formulations constituted separate instances of rulemaking. OPM asserts that the COLA rates are not rules because they are not statements "of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). Rather, OPM asserts, the rates are the end product of the methodology used, which is not itself subject to

---

**5.** We will assume for discussion only that changes in consumer spending habits, as reflected in the survey results, necessarily result in changes in the COLA methodology under OPM rules. OPM has not offered any persuasive evidence that these changes are merely routine adjustments *mandated* by the methodology. In fact, it appears that OPM's changes in the COLA methodology are purely discretionary, rather than the result of the mechanistic application of a set methodology. The following statement, under the heading "Future Changes," appears in the trial exhibit mentioned earlier:

"Evaluation of the COLA program is a continuing process and additional refinements

*may* be incorporated from time to time as more or newer information becomes available or as better procedures are developed." (Emphasis added.)

**6.** OPM's reliance on *American Postal Workers Union v. United States Postal Service,* 707 F.2d 548 (D.C.Cir.1983), is misplaced. In that case the court found that OPM's change in the method of annuity computation constituted an interpretative rule because it was not enacted pursuant to a specific delegation of legislative power in the governing statute. *Id.* at 558–60. In contrast, OPM's delegated authority to set COLA rates here is clearly set out in the COLA statute, 5 U.S.C. § 5941(a).

the notice and comment requirements. We disagree. Clearly, the rates are designed to implement the authority delegated to OPM to set the COLA rates. We agree with the district court's conclusion that the 1980 and 1981 rate formulations were rulemaking under 5 U.S.C. § 551(5). *See Long Island R.R. v. United States,* 318 F.Supp. 490, 495 (E.D.N.Y.1970) (agency's setting of rates to compensate railroads for use of freight cars held to be rulemaking).

We therefore affirm the district court's holding that OPM's changes in the COLA methodology and the 1980 and 1981 formulations of the COLA constituted rulemaking subject to the notice and comment requirements of the APA.

## REMAND TO OPM

Plaintiffs challenge the district court's holding that in light of OPM's failure to comply with the rulemaking procedures of the APA, a remand to OPM for compliance with the notice and comment requirements is warranted, but that the COLA rates for 1980 and 1981 shall remain in effect. Plaintiffs assert that due to OPM's failure to comply with applicable law, they are entitled to the difference between the 20-percent and 17.5-percent rates in effect for 1980 and 1981, respectively, and the statutory maximum rate of 25 percent in effect for 1979.

The district court first noted that it is a well-established rule that administrative rules found to be in violation of the notice and comment requirements of the APA are void and ineffective. *See, e.g., Western Oil & Gas Association v. United States Environmental Protection Agency,* 633 F.2d 803, 812–13 (9th Cir.1980); *Hotch v. United States,* 212 F.2d 280, 283 (9th Cir.1954). The district court, however, cited *Western Oil,* 633 F.2d at 813, for the proposition that a court may under certain circumstances permit the challenged agency actions to remain in effect. The court went on to state:

> In this case, the COLA rates for 1980 and 1981 shall remain in effect. This court has no power to reinstate the COLA rate at twenty-five percent as plaintiffs suggest; nor have plaintiffs cited any authority to support their proposition. Any pecuniary award which might ultimately accrue to plaintiffs may be recovered in accordance with the Back Pay Act after all proceedings in this case have terminated. *See* 5 U.S.C. § 5596(b) (1976). (Footnote omitted.)

545 F.Supp. at 1192.

The *Western Oil* case, relied upon by the district court, involved very different facts and considerations from those in the case at bar. At issue in *Western Oil* was whether to invalidate the Environmental Protection Agency's designations of areas in the State of California not in compliance with pollution standards implementing the Clean Air Act. The court decided to leave the challenged designations in effect, despite the violation of the APA's notice and comment requirements, because of the "unusual circumstances" of the case—i.e., the "possibility of undesirable consequences" which might result to the operation of the Clean Air Act in California. 633 F.2d at 813. Thus, the court made it clear that it was taking the unusual step of maintaining the status quo pending the agency's compliance with notice and comment procedures because of the dire consequences which might follow from invalidation. No similar considerations are shown to be involved in this case.

We agree with plaintiffs that the facts of this case are more closely analogous to the situation in *Buschmann v. Schweiker,* 676 F.2d 352 (9th Cir.1982). In *Buschmann,* the court found that, prior to publication, the agency had not complied with the notice and comment procedures of the APA in its application of an amendment to a regulation affecting Supplemental Security Income recipients. The court held that "[i]n light of the importance of the notice and comment procedure embodied in Section 553 and the failure to comply," the interim amendment to the regulation was invalid. *Id.* at 358. The court therefore remanded the case to the agency for recalculation of plaintiffs' supplemental income benefits for

the period that the procedurally invalid regulation was in effect. *Id.*[7]

In all of the other cases cited by the district court and OPM, viz, *State of New Jersey v. United States Environmental Protection Agency,* 626 F.2d 1038, 1050 (D.C. Cir.1980), *American Iron & Steel Institute v. Environmental Protection Agency,* 568 F.2d 284, 310 (3d Cir.1977), and *American Frozen Food Institute v. Train,* 539 F.2d 107, 135 (D.C.Cir.1976), the court remanded the case for *prospective* compliance with the notice and comment procedures of the APA. In none of the above cases did the court decide to keep the invalid agency action in effect pending retroactive validation through compliance with APA procedures.

We cannot discern the basis for the district court's statement that it has "no power to reinstate the COLA at twenty-five percent." 545 F.Supp. at 1192. As recognized by the district court, agency actions effected in violation of the notice and comment procedures are void. The court held that OPM's modifications to the COLA methodology and the formulations of the 1980 and 1981 rates violated APA procedures, and thus are to be given no legal effect. *See Chrysler Corp. v. Brown,* 441 U.S. 281, 313, 99 S.Ct. 1705, 1723, 60 L.Ed.2d 208 (1979), *Morton v. Ruiz,* 415 U.S. 199, 236, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974). The practical effect of this holding is that OPM's reductions in the COLA rates for 1980 and 1981 are entitled to no judicial recognition, and the 25-percent COLA rate

for 1979 continues as the rate of the COLA for this period.[8]

In *Curlott v. Campbell,* 598 F.2d at 1181–82, the Ninth Circuit stated that the Back Pay Act, 5 U.S.C. § 5596(b) (1982), provides for complete monetary relief to plaintiffs "should it be judicially determined ... that the Employees were denied COLA benefits wrongfully ...." In this case we have determined that the 1980 and 1981 COLA reductions were not effected in accordance with APA procedures. In *Crimaldi v. United States,* 651 F.2d 151, 153 (2d Cir.1981), the court stated that an "unwarranted personnel action," for purposes of recovery under the Back Pay Act, may result from procedural error. Accordingly, we hold that plaintiffs are entitled to the difference between the 20-percent and 17.5-percent rates in effect for 1980 and 1981 and the 25-percent rate in effect for 1979. We remand to the district court for computation of the amount of compensation due plaintiffs under the Back Pay Act. On remand, the district court should also consider any request by plaintiffs for attorney fees.[9]

## CONCLUSION

In conclusion, we hold as follows: [10]

(1) the district court's holding that it had jurisdiction to review plaintiffs' challenge to OPM's COLA methodology is affirmed;

(2) the district court's holding that OPM's methodology is not contrary to law because OPM need not consider the differ-

7. In *Buschmann,* it is clear that plaintiffs' entitlement to recovery was based solely on the agency's failure to comply with the notice and comment procedures, as the court first held that the regulation was valid, i.e., not arbitrary or capricious. 676 F.2d at 355. Furthermore, the court noted that the interim amendment challenged was identical to the final (valid) regulation. *Id.* at 358. Judge Kilkenny dissented on the basis that the district court's finding that the procedural defect was not prejudicial was supported by the record. *Id.* at 358–59. In the present case, the district court did not find, nor does OPM assert, that the procedural error was harmless.

8. In any event, a remand to OPM for recomputation of the 1980 and 1981 COLA rates in light

of comments received would present serious problems of practicality. This is particularly true where any change in the methodology used necessitates the use of data not contained in the survey results used for the 1980 and 1981 COLA formulations.

9. On appeal, plaintiffs assert that they are entitled to attorney fees. Since consideration of the attorney fees issue has been suspended by the district court, any decision on this issue by this court would be premature.

10. Plaintiffs' motion to supplement the record, filed Sept. 19, 1983, is denied as neither relevant nor necessary to resolution of the issues presented on appeal.

ences in goods and services available and the nonfederal manner of living, is reversed. The case is remanded for consideration of OPM's assertion that the existing methodology properly accounts for these factors;

(3) the district court's holding that OPM's changes in the COLA methodology and the 1980 and 1981 formulations of the COLA for the Anchorage area constituted rulemaking subject to the notice and comment requirements of the APA is affirmed; and

(4) the district court's holding that the 1980 and 1981 COLA rates shall remain in effect pending OPM's compliance with the notice and comment procedures is reversed, and the case is remanded to the district court for computation of the amount of compensation due plaintiffs under the Back Pay Act.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.