**AMERICAN PRESIDENT LINES, LTD., et al., Petitioners,**

v.

**FEDERAL MARITIME COMMISSION and United States of America, Respondents.**

**No. 17104.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 31, 1963.

Decided March 28, 1963.

Mr. Elkan Turk, Jr., New York City, with whom Mr. Elkan Turk, New York City, was on the brief, for petitioners.

Mr. Joel E. Hoffman, Atty., Dept. of Justice, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. James L. Pimper, Gen. Counsel, Federal Maritime Commission, Robert E. Mitch-

ell, Deputy Gen. Counsel, and Thomas D. Wilcox, Atty., Federal Maritime Commission, were on the brief, for respondents. Mr. Irwin A. Seibel, Atty., Dept. of Justice, also entered an appearance for respondents.

Messrs. Arthur E. Tarantino, Gordon Poole, Washington, D. C., John R. Mahoney and Elmer C. Maddy, New York City, filed a brief on behalf of the Steamship Conferences and their member lines as amici curiae, urging reversal.

Messrs. John F. Donelan, Dickson R. Loos and John M. Cleary, Washington, D. C., filed a brief on behalf of the National Industrial Traffic League, as amicus curiae, urging dismissal.

Before WASHINGTON, BASTIAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Petitioners, common carrier steamship lines, engaged in commerce between American and foreign ports, are members of the Far East Conference, a voluntary association established pursuant to § 15 of the Shipping Act of 1916, 39 Stat. 733, as amended, 46 U.S.C. § 814, to fix uniform rates for carriers who are members of the Conference. The Far East Conference employs a dual rate contract system whereby shippers who agree to deal exclusively with members of the Conference rather than with independent carriers in the same trade, receive the benefit of uniform conference rates which are lower than those charged to shippers who do not so agree. As a result of the dual rate system Conference members stabilize their rates. The schedules of tariffs charged by the Conference members are filed with the Federal Maritime Commission.

However, a number of carriers in the trade are not members of the Conference and are free to negotiate rates with individual shippers. This often operates to the detriment of the Conference members because a non-Conference carrier may lower his rates at will, while members of the Conference can only reduce their rates pursuant to the rules of the Conference and deliberative action of Conference members. In order to compete more effectively with the independent carriers it has been the practice of the Conference to "open" and "close" rates on particular commodities listed in the Conference tariff. A rate is "opened" when the Conference announces that the published rate is no longer applicable and the members are then free to negotiate their own rates with shippers to meet competition. The process of opening and closing rates to meet competition gives the Conference to some extent the benefits of both regulated rates and competitive rates.

Section 14b of the Shipping Act,[1] provides in part:

"The carrier or conference of carriers may on ninety days' notice terminate without penalty the contract rate system herein authorized, in whole or with respect to any commodity: *Provided, however,* That after such termination the carrier or conference of carriers may not reinstitute such contract rate system or part thereof so terminated without prior permission by the Commission in accordance with the provisions of this section."

On March 2, 1962, the Commission, without notice or hearing, published a rule interpreting this statutory provision. 27 Fed.Reg. 2046.[2] The petitioners then fil-

1. 75 Stat. 762 (1961), 46 U.S.C. § 813a.

2. "Any termination of the contract rate system with respect to any commodity or group of commodities, may only be accomplished after giving 90 days' notice to all contract signatories. Any opening of rates on a commodity or commodities subject to a contract system

will be considered a termination of the contract system as to such commodity or commodities within the meaning of the above quoted portion of section 14(b), and there can be no temporary suspension or limited termination of the contract system for any period of time, be it called temporary open rates, suspension of contract rates, or otherwise,

ed with the Commission a petition for "amendment or repeal of the Rule" in which they requested, among other things, an opportunity to present evidence and arguments to the Commission which, they contend, might cause it to alter its interpretation of Section 14b. The petition was denied by the Commission by an order dated April 19, 1962. This order stated in part:

> "The interpretative rule was properly issued as an interpretative rule under Section 4 of the Administrative Procedure Act, *and is merely declarative* of the Commission's view of the proper interpretation of Section 14b of the Shipping Act, 1916.
>
> "The arguments advanced in the petition of the Far East Conference [petitioners] fail to state reasons sufficient to warrant modification of the rule." (Emphasis added.)

One of the petitioners' major objections to the actions of the Commission concerns the failure to permit petitioners and other interested parties to participate in a hearing. Insofar, however, as the petition seeks a judicial declaration that petitioners are presently entitled to participate in a hearing, that claim has been rendered moot by action of the Commission, taken while this appeal was pending, granting a hearing on these very issues in the near future.[3]

Petitioners nevertheless contend that the rule is presently reviewable, notwithstanding any future changes or new promulgation that may result from the projected rule making proceedings. This contention rests on the ground that the interpretative rule when promulgated was a legislative rule enforcible independent of the statute it purports to interpret. While this rule undeniably deals with a matter of great importance to petitioners' business activities, we need not reach the question of whether it would be reviewable if it were an independently enforcible legislative rule.

The record reveals that the rule was issued in response to requests by various shipping conferences for a statement by the Commission setting forth its views of the meaning of the amended section of the Shipping Act. It was denominated an "interpretative rule" from the time it was published. The Commission explicitly invoked Section 4 of the Administrative Procedure Act as its authority for not complying with other provisions of the statute applying to legislative rule making.[4] The Commission's position, as it is on this appeal, is that such a rule has no independent binding effect on carriers, and that the only penalties for action contrary to the rule are those penalties which were applicable before promulgation of the rule and independent of the

which would not be a termination of the contract system within the meaning of the quoted provision.

Furthermore, under any circumstances where a contract system has been terminated as to any commodity or group of commodities, by opening of rates or otherwise, regardless of whether considered by the carrier or conference as temporarily suspended or terminated and regardless of whether such termination was before or after October 3, 1961, the carrier or conference may not reinstitute or reinstate the contract system as to such commodity or commodities without prior permission by the Federal Maritime Commission in accordance with section 14 (b)."

3. On January 3, 1963, after the present case had been calendared by this court for oral argument, the Commission pub-

lished in the Federal Register, 28 Fed. Reg. 74, a series of proposed rules on the subject of dual rate contract systems. Section 2.3 of the proposed rules covers the same ground as the interpretative rule with which we are concerned in this proceeding. The notice of rule making invited interested parties to participate.

4. "General notice of proposed rule making shall be published in the Federal Register * * *. [T]his subsection shall not apply to interpretative rules, general statements of policy * * * or in any situation in which the agency for good cause finds * * * that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 1003.

The Commission's interpretative rule of March 2 comes squarely within this provision.

rule, i. e., the penalties provided for violation of the Shipping Act itself. Whatever practical or psychological effect this rule may have on the conduct of petitioners,—and we do not doubt that it may have some pragmatic consequences—its legal effect is essentially that of an opinion of the legal staff.[5] Neither the affected parties nor the courts are bound by it unless they elect to adopt it as a correct interpretation of the statute. Hence the Commission's action in promulgating its interpretation of the statute does not constitute action which is subject to judicial review.

The petition for review is therefore

Dismissed.

5. "In addition to the power to enact legally binding regulations conferred upon many of the agencies, all of them may, if they wish, issue interpretations, rulings, or opinions upon the laws they administer, without statutory authorization to do so. * * * Some agencies which issue interpretations couched in general terms rather than rulings upon particular facts are careful to distinguish them from regulations that have the force of law, other agencies simply promulgate their interpretations as regulations which are indistinguishable in form from those that have statutory force.

"Administrative rule-making, in any event, includes the formulation of *both legally binding regulations* and *interpretative regulations*. The former receive statutory force upon going into effect. The latter do not receive statutory force and their validity is subject to challenge in any court proceeding in which their application may be in question. The statutes themselves and not the regulations remain in theory the sole criterion of what the law authorizes or compels and what it forbids. An interpretative regulation even of long standing will be rejected if it is deemed to be in conflict with a clear and unambiguous statute." (Emphasis added and footnotes omitted.) Report of the Attorney General's Committee on Administrative Procedure (1941), pp. 99–100.