**AIR TRANSPORT ASSOCIATION OF AMERICA et al., Plaintiffs,**

v.

**Aileen C. HERNANDEZ et al., Defendants.**

**Civ. A. No. 3096–66.**

United States District Court
District of Columbia.

Feb. 21, 1967.

———◆———

Arnold & Porter, Washington, D. C., Poletti, Freidin, Prashker, Feldman & Gartner, New York City, for plaintiffs.

O'Donnell & Schwartz, New York City, for intervenor.

Barefoot Sanders, Asst. Atty. Gen., David G. Bress, U. S. Atty., Harlan F. Leathers, Michael R. Lemov, Attys., Dept. of Justice, for defendants.

## MEMORANDUM

WALSH, District Judge.

Plaintiffs move the Court for a preliminary injunction to enjoin the Equal Employment Opportunity Commission from issuing an administrative ruling on the grounds of interest pertaining to the issues submitted to the Commission on the part of one of its members.

Defendants, members of the Commission, and Defendant-Intervenor, Transit Workers Union of America, AFL-CIO, filed opposition and cross-motions to dismiss.

The two primary considerations for this Court are: (1) does a District Court of the United States have jurisdiction to review the discretionary interpretations of the Commission under an allegation of prejudice; and (2) was the judgment of a member of that Commission so tainted by conflicting interest as to render her participation unfair on its face.

The E. E. O. C. was established by the Civil Rights Act of 1964.[1] The Commission was created for the primary purpose of providing an arbitration clearing house for alleged employment discrimination.[2] The Act also provided that the Commission could, within its own discretion, issue written interpretations or opinions, and that certain immunity from suit based on those rulings would be granted.[3]

Plaintiffs herein requested the Commission to issue a ruling on whether or not sex is a valid occupational qualification for the position of flight attendant, principally on commercial air flights.[4] The Commission, in its discretion, chose to entertain the question and to issue an interpretive ruling. Hearings began on May 10, 1966, but no decision was reached until November 9, 1966. Release of that decision has been held in abeyance pending a determination by this Court of the issues involved.[5]

Defendants contend that a District Court has no jurisdiction to review interpretative rulings of the Commission, and further, that the Court has no jurisdiction to review the action of the Commission in permitting a particular Commissioner to rule on the question presented, or for the Court to disqualify that Commissioner. They urge that the Commission's ruling has no legal effect and, therefore, is not subject to review. Further, defendants argue that in at least three other sections of the Act jurisdiction is placed in the District Court, and that had Congress intended judicial review of their rulings it would have specifically said so.

1. 42 U.S.C. § 2000e–4.

2. 110 Cong.Record 14188, June 17, 1964; 110 Cong.Record 14331, June 18, 1964.

3. 42 U.S.C. § 2000e–12(b).

4. *Bona fide* occupational qualifications on the basis of religion, sex, and national origin are excluded under the unlawful employment practice provisions. 42 U.S.C. § 2000e–2(e).

5. The Commission held its ruling until November 21, 1966, to give plaintiffs opportunity to file this suit. This Court issued a temporary restraining order on November 21, 1966, for the purpose of holding further hearings. By consent the ruling remains undisclosed.

Plaintiffs allege that these interpretative rulings do have legal effect and allude to 42 U.S.C. § 2000e–12(b), which provides:

"In any action or proceeding based on any alleged unfair employment practice, no person shall be subject to any liability or punishment for or on account of (1) the commission by such person of an unlawful employment practice if he pleads and proves that the act or omission complained of was in good faith, in conformity with, and in reliance on any written interpretation or opinion of the Commission, * * *. Such a defense, if established, shall be a bar to the action or proceeding, * * * ".

The Act further provides that if the interpretation is reversed or substantively altered by either the Court or the Commission the immunity dissolves prospectively.

All parties agree that the defense provisions of the Civil Rights Act, Equal Employment Opportunities Subchapter, are similar in nature to the immunity provisions of the Portal-to-Portal Act.[6] Defense counsel refers to a long line of cases distinguishing between agency regulations, orders, rulings, interpretations, and opinions. Rather than involve itself in a semantic bramble bush, this Court takes cognizance of two cases cited by the defense.

In American President Lines, Ltd. v. Federal Maritime Commission, 114 U.S.App.D.C. 418, 316 F.2d 419 (1963), the Court found that an agency interpretation did not have the force of law or create standing to sue. It stated that neither the parties to the interpretation or the courts were bound by it. In the instant case, the parties and the Court are bound, at least retrospectively to the date of issuance, by the ruling.

In Abbott Laboratories v. Celebrezze, 352 F.2d 286, at page 289 (3rd Cir., 1965), cert. granted 383 U.S. 924, 86 S.Ct. 928, 15 L.Ed.2d 844, the Court stated, "The regulations in question are not those having the force and effect of law by virtue of the authority delegated by the Act". Section 2000e–12(b) creates an affirmative defense, presumably for employers against Section 2000e–5 actions. Here the authority delegated by the Act is the creation of an affirmative defense by an interpretation favorable to the plaintiffs and, no matter what its administrative nomenclature, it has the effect of law.

Since the Commission's interpretative rulings under Section 2000e–12(b) do have the effect of law, the next question to consider is whether or not a District Court has jurisdiction to review those interpretations in any manner. Defendants urge that Congress demonstrated its intent by specifically referring to District Court jurisdiction in Sections 2000e–5(f), 2000e–6(b), and 2000e–8(c) of the Act and by not including jurisdiction in 2000e–12(b). Defendants also allude to the Administrative Procedure Act, 5 U.S.C. § 553, making interpretive rulings expressly excluded from the formal requirements of that Act. Plaintiffs argue that the general review provisions of 5 U.S.C. § 702 grant jurisdiction to review.

The present case presents judicial review in two separate areas: (1) direct review of the substantive findings of the Commission's interpretation in accordance with 5 U.S.C. § 706; and (2) direct review of a claim of prejudice on the part of one or more Commissioners by an interested party to the interpretation. Since jurisdiction can be disposed of by the second area it is unnecessary and irrelevant to pursue the first.[7]

The legislative history of the Act does not contain any pertinent inquisitions revealing whether or not Congress intended judicial review where a claim of bias is

---

6. 29 U.S.C. § 258.

7. As both parties point out, this area is at least ambiguous, but for the purposes of this suit any further discussion would be academic only.

made against a Commissioner. To determine Congressional intent, if they specifically considered the question, we must look to the overall purpose of the Act.

It is obvious on the face of the statute that relief was being given primarily to employees being discriminated against on the bases of race, religion, sex, and national origin. The legislative history reflects that the primary relief was to be through the arbitration and conciliation powers of the Commission.[8] Congress hoped that by providing a sounding board for complaints by employees, amicable settlements could be effectuated by the Commission to end discriminatory employment practices.[9] Congress also provided for enforcement provisions in District Courts where conciliation, conference, and persuasion failed to solve alleged unlawful employment practices.[10] Keeping in mind that Sec. 2000e–12(b) has legal effect, and understanding that purposeful persuasion is the statute's primary concern, Congress must have intended judicial review under the present circumstances.[11] Employers, such as the present plaintiffs, would be more disposed to settlement under the influential forces of an impartial Commission.

■ The argument advanced by the defendants that plaintiffs could attack an interpretative ruling in a District Court 2000e–5 action, is rejected as impractical. If this Court refuses jurisdiction here, and *if the ruling is introduced in evidence,*[12] the trial court would then have to consider both the alleged unlawful employment practice and the administrative procedure by which this particular ruling was formulated. Again, the legislative history as well as the over-all purpose of the Act indicates Congress intended the District Court to try *de novo* the unlawful employment practice issue only.

The second major inquiry for this Court is whether or not Aileen Hernandez should be disqualified from sitting in these particular proceedings before the E. E. O. C. Plaintiffs contend that Mrs. Hernandez should be disqualified on the grounds of interest, although they do not specify the nature of that interest.[13] Prior to May 10, 1966, Northwest Orient Lines requested the Commission to determine whether sex was a *bona fide* occupational qualification for the position of air line cabin attendant. The Commission, in the exercise of its discretion, decided to entertain this question and on May 10th a full hearing was held. Both sides were granted extensions of time in which to file further written arguments.

On September 6, 1966, Mrs. Hernandez circulated among the Commissioners her Memorandum stating that the Northwest Orient case had been pending for too long a period of time and requested immediate action.[14] Mrs. Hernandez submitted her resignation as a member of the Commission to the President of the United States on October 10, 1966, to become effective November 10, 1966.

Sometime during the period between October 14 to October 29, Mrs. Hernandez had a conversation in her office

---

8. Op. cit., 110 Cong.Record.

9. See 42 U.S.C. § 2000e–5(a).

10. For authority for the position that action by the Commission is not a condition precedent to a right of action in the District Court, see Hall v. Werthan Bag Corp., 251 F.Supp. 184 (M.D.Tenn., 1966).

11. This is not in conflict with American Airlines, Inc. v. C. A. B., 123 U.S.App.D.C. 310, 359 F.2d 624 (1966), and the distinction drawn between adjudications and rule making, and their separate relationships under the Administrative Procedures Act. See also S. E. C. v. Chenery Corp., 332

U.S. 194, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995 (1947).

12. See Transcript, December 20–21, 1966, Hearing, pages 50–51. Also Memorandum in Support of Defendant's Cross Motion to Dismiss, filed December 9, 1966, at page 23.

13. Plaintiffs do not argue that Mrs. Hernandez prejudged the issues before the Commission.

14. This Memorandum also made clear her position regarding the request for a BFOQ.

with Pauli Murray concerning the formation of a women's civil rights group called the National Organization of Women.[15] Subsequently, on October 29 or 30, the National Organization of Women held its organization meeting and issued a policy statement concerning the issue still pending before the Commission, and adverse to the interests of the Air Transport Association. The press release announcing the formation of N. O. W. also stated that Mrs. Hernandez had been elected Executive Vice-President, "subject to her consent." An additional press release on or about November 11, 1966, stated, "The Conference named Aileen Hernandez, former Senior Commissioner of the Equal Employment Opportunity Commission, as executive vice president. Richard Graham, director of the National Teacher Corps and former Equal Employment Opportunity Commissioner, was elected vice president." Both former "Commissioners'" names were printed on N. O. W. stationery, which was circulated prior to the effective date of Commissioner Hernandez' resignation.[16]

On November 9, counsel for plaintiffs, Mr. Jesse Freiden, appeared before the entire Commission and requested that Mrs. Hernandez be disqualified from voting on the question on the grounds that it was improper for a Commissioner to vote on an interpretive ruling on her next to last day in office when it appeared that she was about to take, or was considering taking, a high office in an organization which had taken an affirmative policy position relating to the question on which the Commission was about to vote. The Commission Chairman refused to disqualify her and Mrs. Hernandez declined to disqualify herself. Later, on the afternoon of November 9, she and the other three members of the Commission voted.[17]

In Mrs. Hernandez' deposition she denies that any prospective position with N. O. W. influenced her decision in this matter, and states she had made her determination by at least May of 1966.[18] She also indicates that because Commission had been lenient in granting permission for both parties to submit data to them, both plaintiff and presumably defendants had "been submitting things up until November. * * * " [19]

It is sufficient for the purposes of this litigation to say that procedural due process is denied where a member of a government agency votes on an issue having legal substance if that member is considering taking a non-pecuniary position with an organization which has taken an affirmative stand concerning the issue, and the member is aware of that stand. This is true where, as here, the vote on the issue is to be taken on that member's next to the last day in office. Regardless of the fact that Mrs. Hernandez may have already come to a decision prior to her knowledge of N. O. W.'s activities,[20] she was not called on to actually vote on the issue until such time as all pertinent data was received from interested parties in the litigation, and she had knowledge of N. O. W.'s activi-

---

15. Mrs. Hernandez originally dated this conversation as early September or August of 1966, but later retracted that statement and dated the period as October 14 to 29. See deposition of Mrs. Hernandez, pages 28 and 29. During this discussion Miss Murray asked Mrs. Hernandez to become Executive Vice President, and Mrs. Hernandez replied she would not consider a position until after her resignation became effective.

16. See Exhibit J of Plaintiff's *Complaint for an Injunction*.

17. Chairman Shulman was not a member of the Commission on May 10, but after examining the record of that proceeding and briefs filed by both parties, voted.

18. Hernandez' deposition, page 93.

19. Ibid.

20. See Hernandez deposition, page 119. It is presumed that Mrs. Hernandez did consider impartially the facts in this particular matter.

ties and was considering taking the office of executive vice president. The law is clear that where a present interest in maintaining an earlier position inhibits the free exercise of the decider's mind when the moment of determination arrives, disqualification is an appropriate remedy.[21] The "very appearance of complete fairness" on the part of Mrs. Hernandez was not present as required by law.[22]

This opinion has no conclusive effect on the Commission. It may, in its discretion, rehear the issue or refuse to issue an interpretive ruling as requested by the Airlines. This Court holds only that the legislature intended judicial review of the Commission's interpretative rulings which create immunity from suit under 42 U.S.C. § 2000e–12(b), where a Commissioner is challenged, and that procedural due process under the Equal Employment Opportunities Section of the Civil Rights Act of 1964 requires the disqualification of a member of that Commission where there is not on its face the appearance of fairness in voting on issues before the Commission. This is especially true when it is understood that the Commission's primary purpose is conciliation and persuasion.

For the above reasons the motion for the preliminary injunction will be granted, and the Commission enjoined from disclosing its interpretative ruling on whether or not sex is a *bona fide* occupational qualification for the position of flight attendant, which ruling was participated in by Aileen Hernandez; defendants' motion to dismiss the complaint, or in the alternative for summary judgment, will be denied; and Intervenor's motion to dismiss will be denied.[23]

Counsel for plaintiffs to present an appropriate order.

---

21. In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942; Pillsbury Company v. F. T. C., 5 Cir., 354 F.2d 952.

22. Amos Treat & Co. v. S. E. C., 113 U.S. App.D.C. 100, 306 F.2d 260 (1952); Texaco, Inc. v. F. T. C., 118 U.S.App.D.C. 366, 336 F.2d 754 (1964).

---

23. Motion for summary judgment filed following hearing on the present motion is still pending, and is not affected by this opinion.