Susan ALANIZ, et al., Plaintiffs,

v.

**OFFICE OF PERSONNEL MANAGE-MENT, et al., Defendants.**

No. A81–72 Civ.

United States District Court,
D. Alaska.

Aug. 25, 1982.

Robert Mullendore, Roberts, Shefelman, Lawrence, Gay & Moch, Anchorage, Alaska, for plaintiffs.

Michael Spaan, U. S. Atty. for Alaska, Anchorage, Alaska, Dwight D. Meier, U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on cross-motions for summary judgment. Jurisdiction exists pursuant to 5 U.S.C. § 702 (1976); 28 U.S.C. § 1331(a) (1976) (as amended by Pub.L. No. 96–486, 94 Stat. 2369); and 28 U.S.C. § 1346(a)(2) (1976).

### I. FACTS

The suit raises challenges to administration of the cost-of-living allowance (hereinafter COLA) provided federal employees in the Anchorage, Alaska area. In essence, COLA is a federal program supplementing basic pay of employees living in designated non-foreign areas. The Office of Personnel Management (hereinafter OPM) currently is delegated authority to determine those

places and fix the amount of the COLA,[1] with the rate subject to a statutory maximum of twenty-five percent of an employee's basic pay.[2] Original statutory authorization for the COLA program was provided by enactment of the Independent Offices Appropriation Act in 1948.[3] An amendment to that statute sets forth criteria to be used in implementing the program, and requires the President to promulgate regulations for use in determining what places qualify for additional compensation and the applicable rate at each location.[4] Pursuant to this Congressional mandate, President Truman issued Executive Order No. 10,000.[5] In addition to delegating authority to designate places and rates for the COLA, the order directs the chosen agency to issue further regulations governing the program as may be necessary.[6] Statutory authorization for the COLA is presently codified at 5 U.S.C. § 5941 (1976).

Fourteen geographic regions have been approved as places for administration of the COLA program. The location at issue includes those federal employees working at sites within fifty road miles of Anchorage, Alaska.[7] Two reductions in the COLA rate for this area provide the catalyst for this lawsuit. In 1979 the COLA rate for the Anchorage area was the legal maximum of twenty-five percent. The COLA rate for this allowance area was reduced in 1980 to twenty percent. Another reduction the following year set the rate at 17.5 percent.[8]

This class suit was subsequently filed on behalf of:

all those persons who are now, or at any time since February 10, 1980, have been employed by the United States or any federal agency at sites within 50 road miles of Anchorage, Alaska, or who become so employed prior to the entry of final judgment in this case, and who while so employed have received a cost of living allowance ... in addition to basic pay in accordance with 5 U.S.C. § 5941, 5 C.F.R. §§ 591.201–.213 and/or Executive Order No. 10,000.

Plaintiffs raise procedural as well as substantive challenges to the COLA program as applied, and seek an injunction requiring OPM to restore the COLA to twenty-five percent and continue it at that rate until the rate is revised in accordance with law. Plaintiffs also pray for individual awards of back pay, under the Back Pay Act (5 U.S.C. § 5596), for those amounts allegedly underpaid since the time of the 1980 COLA reduction. In addition, plaintiffs seek declaratory relief regarding the methodology OPM must utilize in making COLA adjustments, and an injunction requiring the agency to use such methodology in future reductions of the COLA.

## II. THE CROSS–MOTIONS FOR SUMMARY JUDGMENT

Both parties have filed summary judgment motions contending there are no genuine issues of material fact and the case

1. The Civil Service Commission was the original executive agency charged with implementing the COLA program. *See* Executive Order No. 10,000, 3 C.F.R. 794 (1943–48 Compilation), *reprinted in* 5 U.S.C. § 5941 at 555 (1976). After enactment of the Civil Service Reform Act of 1978, the task shifted to OPM, where it remains at present. *See generally* 5 U.S.C. §§ 1101–05 (Supp. IV 1980). Reference will occasionally be made in this memorandum to OPM alone in addressing the general duty of both agencies to implement the COLA program.

2. 5 U.S.C. § 5941(a) (1976).

3. *See* Independent Offices Appropriation Act, 1949, Pub.L. No. 491, 62 Stat. 176 (1948).

4. *See* Supplemental Independent Offices Appropriation Act, 1949, Pub.L. No. 862, 62 Stat. 1205 (1948).

5. *See* Executive Order No. 10,000, 3 C.F.R. 792 (1943–48 Compilation), *reprinted in* 5 U.S.C. § 5941 at 554–56 (1976) (hereinafter referred to as the Executive Order).

6. *Id.* sec. 205.

7. *See* 5 C.F.R. § 591.207, app. A of subpart B, p. 328 (1982).

8. During the course of this litigation, the COLA for the Anchorage allowance area was raised to 22.5 percent. This factor is irrelevant to the present proceedings and will not be considered by the court.

should be decided as a matter of law. *See* Fed.R.Civ.P. 56. Before addressing plaintiffs' substantive and procedural challenges, however, the court must first resolve two jurisdictional issues raised by OPM.

### A. Jurisdictional Issues

■ OPM first alleges § 701(a)(2) of the Administrative Procedure Act (hereinafter APA) prohibits this court from reviewing the agency's substantive decisions. The court notes that the APA expressly precludes judicial review when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2) (1976). The United States Supreme Court has characterized this provision as a very narrow exception to the preference favoring judicial review. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). *Accord, Strickland v. Morton*, 519 F.2d 467, 468 (9th Cir. 1975). As stated by the Supreme Court, legislative history of the APA indicates the exception is applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is *no law to apply.* *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. at 410, 91 S.Ct. at 820.

There is nothing in the COLA statute which indicates Congress intended to commit review of OPM actions entirely to the agency itself. OPM cites to *Gifford v. Small Business Administration*, 626 F.2d 85 (9th Cir. 1980) to support the argument that its actions are nonreviewable. That case is distinguishable from the present case. In *Gifford*, a loan applicant challenged decisions of the Small Business Administration (SBA) related to the amount of a loan, and the extent to which managerial counseling and assistance would be provided. The court held both decisions were "committed to agency discretion" within the meaning of § 701(a)(2) of the APA; hence, there was no basis for judicial review. *Gifford v. Small Business Administration*, 626 F.2d at 86–87. The *Gifford* court cited *Southern Railway Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979), for the proposition that when an agency's authority was couched in permissive rather than mandatory language, nonreviewability should be implied. *Id.* at 86. Both *Southern Railway* and *Gifford* dealt with statutory language that was clearly permissive.[9] Such a situation does not exist in the present case.[10] As a consequence, nonreviewability will not be implied.

There is also law to apply in this case. Almost every agency action involves some exercise of discretion. *Ferry v. Udall*, 336 F.2d 706, 711 (9th Cir. 1964). In determining the decisive question whether agency action is committed to agency discretion by law, courts have focused on whether guidelines exist against which the agency decision may be measured. The present case is unlike *Southern Railway* and *Gifford* because courts in those two cases found the statutes to be lacking in factors the agency could use to guide in decision-making.[11] In contrast, the statute authorizing the COLA; the Executive Order implementing the statute; and OPM's own regulations governing the COLA program all contain legal standards for reviewing the substance of OPM actions.[12] *See Strickland v. Morton*, 519

---

**9.** *See Southern Railway Co. v. Seaboard Allied Milling Corp.*, 442 U.S. at 455, 99 S.Ct. at 2394 ("[T]he Commission *may*, upon the complaint of an interested party or upon its own initiative, order a hearing . . . ."); *Gifford v. Small Business Administration*, 626 F.2d at 86 (SBA empowered to provide assistance "whenever it determines such action is necessary").

**10.** "The Office of Personnel Management *shall* from time to time subject to applicable law" designate places and fix rates for the COLA. Executive Order No. 10,000, *reprinted in* 5 U.S.C. § 5941, sec. 205 (Supp. IV 1980). *See also id.* sec. 210 (OPM shall review periodically, but at least annually places designated and rates fixed).

**11.** *See Southern Railway Co. v. Seaboard Allied Milling Corp.*, 442 U.S. at 455, 99 S.Ct. at 2394; *Gifford v. Small Business Administration*, 626 F.2d at 87.

**12.** *See* 5 U.S.C. § 5941(a) (1976); Executive Order No. 10,000, 3 C.F.R. 795 (1943–48 Compilation), *reprinted in* 5 U.S.C. § 5941 at 281, sec. 205 (Supp. IV 1980); 5 C.F.R. §§ 591.-206–.207 (1982).

F.2d 467, 471 (9th Cir. 1975); *Ness Investment Corp. v. United States Department of Agriculture*, 512 F.2d 706, 715 (9th Cir. 1975). As a result, 5 U.S.C. § 701(a)(2) does not preclude judicial review.

The second jurisdictional challenge concerns OPM's assertion that the APA was not applicable to the agency administering the COLA statute at the time the currently effective regulations were published, *i.e.*, the Civil Service Commission.[13] Hence, this court should not have jurisdiction to review procedural infirmities under 5 U.S.C. § 553 relating to actions by the Civil Service Commission. The court finds there is no reason to decide this issue. Plaintiffs only challenge agency action by OPM.

### B. Standard and Scope of Review

■ In scrutinizing OPM actions, the court must use the standard of review found at 5 U.S.C. § 706 (1976).[14] The last sentence of this section also sets forth the applicable scope of review. Courts defining the scope of review have stated that, in general, substantive decisions by an agency subject to the APA must be reviewed by examining the full administrative record existing at the time the action was taken. *See Citizens to Preserve Overton Park, Inc.*

*v. Volpe*, 401 U.S. at 420, 91 S.Ct. at 825; *Asarco Inc. v. United States Environmental Protection Agency*, 616 F.2d 1153, 1159 (9th Cir. 1980). This is especially true where, as in this case, the agency has not provided formal findings to support its action.[15] In light of the foregoing, the scope of review in the present case allows the court to consider affidavits, depositions and exhibits in the record containing testimony by OPM officials and information regarding formulation of the COLA methodology.

### C. Substantive Challenges to OPM's Administration of the COLA Program

#### 1) The Three Factors in Section 205(b)(1) of Executive Order No. 10,000

■ The first substantive challenge concerns a question of law related to three factors mentioned in both the Executive Order and an implementing regulation. The order requires OPM to consider three factors in designating places for the COLA program. Those factors are: 1) relative consumer price levels in the allowance area and the District of Columbia; 2) differences in goods and services available in the allowance area and the District of Columbia; and 3) the manner of living of federal and non-federal employees in an allowance

---

**13.** The regulations at issue were promulgated in 1976 by the Civil Service Commission. *See* 5 C.F.R. Part 591 at 324 (1982). The Civil Service Reform Act of 1978 made OPM actions relating to the COLA program subject to rulemaking procedures of the APA for the first time. 5 U.S.C. § 1105 (Supp. IV 1980).

**14.** To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
   (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;
   (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
   (D) without observance of procedure required by law;
   (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
   (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706 (1976).

**15.** It appears OPM did not issue formal findings for either the changes in COLA methodolo-

area.[16]   One of OPM's regulations also states the factors in the following manner:

> § 591.207   Places and rates at which allowances shall be paid.
>
> Allowances are authorized to be paid in consideration of relative living cost differences between an area covered and the Washington, D. C., area and differences in goods and services available, and the manner of living of persons employed in the area concerned in positions comparable to those of United States employees in the area. . . .

5 C.F.R. § 591.207 (1982).   The issue for the court is whether these three factors are to be used solely in fixing places or whether they should additionally be used in fixing the COLA rate for each allowance area. Plaintiffs assert the latter of these possibilities.   They maintain OPM has failed to include in the COLA methodology the second and third factors listed in the Executive Order.   Hence, the methodology is contrary to law in accordance with 5 U.S.C. § 706(2)(A).   In opposition, OPM maintains the three factors need only be used in designating places for the COLA program.

The court holds the three factors previously enumerated need only be applied in fixing places for the COLA program.   Initially, it is worth noting the Executive Order states the three factors only in the provision relating to "designating places." [17] Even assuming an ambiguity exists in the order regarding OPM's use of the factors; it is recognized that an agency has presumed expertise in interpreting executive orders charged to its administration, and judicial review must accord great deference to the agency's interpretation.   *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792,

801–802, 13 L.Ed.2d 616 (1965);   *Kester v. Campbell,* 652 F.2d 13, 15 (9th Cir. 1981). To be sustained, the agency's interpretation need only be reasonable, and it meets this criterion unless it is plainly erroneous or inconsistent with the order.   *Kester v. Campbell,* 652 F.2d at 16.   Since neither of these circumstances are present, OPM's interpretation of the Executive Order must be deemed reasonable.   Limiting use of the three enumerated factors to a determination of places for the COLA is also consistent with the President's broad grant of authority to OPM for setting COLA rates.[18]

### 2) The Challenge to OPM's Measurement of Relative Consumer Price Levels

Consistent with the COLA statute and the Executive Order, OPM chose to fix COLA rates primarily based on the extent to which living costs differ between a particular allowance area and the Washington, D. C. area.[19]   Living costs are calculated using an arithmetic procedure based on a system of expenditure categories from which a small selection of representative items are chosen.   A weighting system established for the various categories is utilized for estimating expenditures in both Washington, D. C. and Anchorage.   Plaintiffs' cross-motion for summary judgment challenges the procedure used in measuring relative consumer price levels.   Four arguments are made to the court for invalidating the procedure under § 706(2)(A) of the APA as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

a.   *Applying 5 U.S.C. § 706(2)(A).*   In applying the standard of review at § 706(2)(A), it is first necessary to deter-

---

gy or the Anchorage allowance area rate reductions in 1980 and 1981.

**16.**   Executive Order No. 10,000, *reprinted in* 5 U.S.C. § 5941, sec. 205(b)(1) (Supp. IV 1980).

**17.**   *Id.   See also Curlott v. Hampton,* 438 F.Supp. 505, 508 (D.Alaska 1977), *rev'd on other grounds,* 598 F.2d 1175 (9th Cir. 1979).   The court does not agree with plaintiffs' argument that the President must have intended the three factors be used in setting COLA rates.   While this‚ interpretation would make good sense,

plaintiffs have not provided the court with any persuasive authority in support of their proposition.

**18.**   *See* Executive Order No. 10,000, *reprinted in* 5 U.S.C. § 5941, sec. 205(a)(c) [sic] (Supp. IV 1980).

**19.**   *See* 5 U.S.C. § 5941(a)(1) (1976); Executive Order No. 10,000, *reprinted in* 5 U.S.C. § 5941, sec. 205(a)(2) (Supp. IV 1980).

mine whether OPM was acting within the parameters of the authority delegated to it. See *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. at 415–16, 91 S.Ct. at 823–24. The court has no trouble concluding in the present case that OPM acted within the scope of its authority. The COLA statute as well as the Executive Order evidence a broad grant of authority and discretion to OPM for fixing places and rates in implementing the COLA program.

With the requisite authority established, a court must apply the standard of review. The Supreme Court stated how courts should apply § 706(2)(A) in *Citizens to Preserve Overton Park, Inc. v. Volpe.*

> Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." ... To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

401 U.S. at 416, 91 S.Ct. at 824 (citations omitted). The Ninth Circuit has similarly stated "the focus of judicial review is not on the wisdom of the agency's decision, but on whether the process employed by the agency to reach its decision took into consideration all the relevant factors." *Asarco, Inc. v. United States Environmental Protection Agency*, 616 F.2d at 1159. The critical issue at this juncture, then, is whether COLA methodology relating to determination of relative price levels takes into consideration all relevant factors. This in turn necessitates a determination as to what the relevant factors are in this case.

The COLA statute is the logical starting place for and provides guidance in discerning factors the court must consider. It states that the COLA and differential allowance [20] are to be based on: "(1) *living costs substantially higher than in the District of Columbia*; (2) conditions of environment which differ substantially from conditions of environment in the continental United States and warrant an allowance as a recruitment incentive; or (3) both of these factors." 5 U.S.C. § 5941(a) (1976) (emphasis added). The second factor obviously refers only to differentials since it is conditioned on the need to provide recruitment incentive. The statute additionally provides: "[e]xcept as otherwise specifically authorized by statute, the allowance is paid only in accordance with regulations prescribed by the President establishing the rates and defining the area, groups of positions, and classes of employees to which each rate applies." *Id.* As previously stated in this memorandum, the President prescribed regulations relating to the COLA via Executive Order No. 10,000. Pursuant to that order, OPM is currently directed to fix for each allowance area a rate of compensation to be paid due to *living costs higher than the District of Columbia*, and to promulgate further regulations governing the compensation as are necessary. *See* Executive Order No. 10,000, 3 C.F.R. 795 (1943–48 Compilation), *reprinted in* 5 U.S.C. § 5941 at 555 (1976). The only other reference in the Executive Order to fixing the COLA rate is inapplicable for present purposes since it refers to deductions from the COLA due to federal housing or special purchasing privileges. *See Id.* § 205(b)(2).

As the foregoing makes clear, authority to fix COLA rates was ultimately delegated to OPM. Regulations promulgated by the agency may therefore also be turned to as a source of relevant factors for judicial review of OPM actions. Few of the OPM regulations in 5 C.F.R. Part 251 address the actual procedure for setting the COLA rate.

---

**20.** The COLA statute, provides for two types of allowances: a "cost of living" allowance (the COLA) and a "differential" allowance. As stated in the statute, the latter allowance is based on the premise that environmental conditions in certain non-foreign areas warrant additional compensation as a recruitment incentive. 5 U.S.C. § 5941(a)(2) (1976). *See also* Executive Order No. 10,000, *reprinted in* 5 U.S.C. § 5941, sec. 202(a) (1976).

The regulation at 5 C.F.R. § 591.206 provides that cost of living survey findings shall be used to calculate a comparative cost index between Washington, D. C. and the respective allowance areas. A "Comparative Cost Index and Allowance Table" is published with the regulation to be used by the OPM in setting the COLA rate. The only other regulation pertinent to methodology for determining the COLA rate is 5 C.F.R. § 591.207. This regulation combines the separate criteria set forth in the COLA statute and the Executive Order for consideration in designating allowance areas and rates. As previously noted by the court, the only factor which the OPM is required to consider in determining a COLA rate is the difference in living costs between the particular allowance area and the Washington, D. C. area.

In applying the standard of review at § 706(2)(A) to OPM's determination of relative price levels, the court recognizes that plaintiffs have filed voluminous pleadings containing opinions as to the methodology they believe should be used to determine the COLA. Analysis should not unduly focus on these pleadings, however, since the court's duty is to apply the applicable standard of review to the methodology actually used by the OPM. With this in mind, the court will address plaintiffs' four challenges to the OPM's determination of relative price levels.

*b. Four challenges to the methodology.* Plaintiffs first allege the methodology gives a distorted view of price differentials because it compares goods and services of different quality or quantity. While the methodology may not be a model of equity, it nonetheless is properly based on the difference in living costs between Anchorage and Washington, D. C. OPM's chosen methodology meets the test of § 706(2)(A) of the APA as stated in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. at 416, 91 S.Ct. at 823. The court concludes that OPM's methodology does not violate 5 U.S.C. § 706(2)(A) insofar as plaintiffs allege the methodology compares goods and services of different quality or quantity.

Plaintiffs' second challenge to the methodology for determining relative price levels is that OPM conducted a biased selection of stores for obtaining price data. Plaintiffs raise two arguments in support of this contention. They first claim OPM failed to consider differences between federal and privately employed consumers in Anchorage regarding shopping habits. This claim is unfounded for the reason that the OPM is under no obligation to make this comparison in setting COLA rates. The second claim alleges no attempt was made to factor out the influence of average GS level differences between Anchorage and Washington, D. C. It is asserted the average GS level is lower in Anchorage than in Washington, D. C. Hence, the allegedly more affluent Washington, D. C. workers tended to name more expensive stores in responding to the Living Pattern Questionnaire than did Anchorage employees. While this procedure may introduce bias into the COLA methodology, it cannot be said OPM's actions violate 5 U.S.C. § 706(2)(A). In comparing living costs between Anchorage and Washington, D. C. pursuant to the mandate of the COLA statute, OPM has chosen a reasonable method to select stores for obtaining price data. This court will not substitute its judgment for that of the agency. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. at 416, 91 S.Ct. at 823; *Asarco, Inc. v. United States Environmental Protection Agency*, 616 F.2d at 1158.

The third challenge to OPM's determination of relative price levels alleges housing cost data is not typical of the Anchorage area because the methodology does not consider: 1) relative consumer price levels between Anchorage and the District of Columbia; and 2) the manner of living of persons privately employed in the Anchorage area in positions comparable to those of federal employees in Anchorage. Plaintiffs acknowledge that these factors are derived from Executive Order No. 10,000. As this court has previously determined, OPM is required to consider the criteria only in relation to designating *places* for the COLA program. OPM's methodology regarding

housing cost data is therefore not in violation of § 706(2)(A) of the APA.

The final challenge to methodology used in determining relative price levels focuses on pricing techniques used by OPM. It is alleged the agency's procedure fails to reflect the local manner of living because it prices the most popular brands at stores where federal employees shop and bases house cost estimates only on what federal employees pay. The court notes that this argument erroneously assumes the "manner of living" criterion applies to fixing the COLA rate. As a consequence, the methodology is not violative of § 706(2)(A) of the APA.

### 3) Challenging the COLA Methodology Based on 5 U.S.C. § 5301

■ Plaintiffs rely on the two statutorily-created policies of equal pay for substantially equal work, and comparability between federal and private enterprise pay rates for the same levels of work, in challenging OPM's methodology for determining the COLA. *See generally* 5 U.S.C. § 5301(a)(1), (3) (1976). The argument is inapplicable in the context of this case since the Federal Salary Reform Act does not apply to the COLA. Section 5301 provides that the policies apply to "statutory pay systems." *Id.* § 5301(a). Such pay systems are expressly defined in the section, and it is clear the concept does not include the COLA. *See id.* § 5301(c).

### D. Procedural Challenges to OPM's Administration of the COLA Program

#### 1) OPM's Alleged Failure to Promulgate Regulations

■ Plaintiffs allege OPM is in violation of law for not promulgating regulations establishing the COLA rates as required by the COLA statute and Executive Order No. 10,000. It is evident the regulations published at 5 C.F.R. Part 591 do not reveal in detail COLA methodology pertaining to the setting of rates. They do, however, meet the requirements of both the COLA statute and the Executive Order, as interpreted by OPM. The COLA statute provides "the allowance is paid only in accordance with regulations prescribed by the President establishing the rates and defining the area, groups of positions, and classes of employees which each rate applies." 5 U.S.C. § 5941(a) (1976). As previously noted by the court, the Executive Order then delegated to OPM the duty to determine places and fix rates for the COLA program. *See* Executive Order No. 10,000, 3 C.F.R. 795 (1943–48 Compilation), *reprinted in* 5 U.S.C. § 5941, sec. 205 at 555 (1976). Since this authority was ultimately delegated to OPM, it follows that the duty to promulgate regulations belonged to OPM. Regulations at 5 C.F.R. Part 591, app. A of subpart B establish the places, rates and special eligibility requirements for the COLA program. The regulations at 5 C.F.R. §§ 591.203–.207 also evidence fulfillment of the duty to prescribe regulations. While these regulations do not reveal the COLA methodology in great detail; they represent a reasonable interpretation of the statute. Plaintiffs urge the court to interpret the duty to prescribe regulations as requiring that regulations be promulgated to reflect all procedures relating to the fixing of COLA rates. The court need not pass on the correctness of this interpretation, however, in light of the fact that OPM reasonably interpreted the statutory mandate as not requiring promulgation of detailed regulations. *See Udall v. Tallman*, 380 U.S. at 16, 85 S.Ct. at 801.

Plaintiffs also allege that apart from the COLA statute, the Executive Order by itself directs OPM to promulgate detailed regulations concerning methodology for setting COLA rates. The order states that OPM shall "prescribe such further regulations, governing such compensation [COLA], *as may be necessary.*" Executive Order No. 10,000, 3 C.F.R. 795 (1943–48 Compilation), *reprinted in* 5 U.S.C. § 5941 at 555 (1976). Plaintiffs stretch the English language beyond recognition in arguing this phrase requires OPM to prescribe regulations. In any event, OPM's interpretation of this portion of the order was reasonable. *See Kester v. Campbell*, 652 F.2d at 15–16.

*2) OPM's Alleged Failure to Comply with the Notice and Comment Requirements of the APA*

█ In attacking OPM's actions on procedural grounds, plaintiffs contend formulation of methodology for setting COLA rates violated APA notice and comment requirements related to rulemaking. *See* 5 U.S.C. § 553 (1976). With enactment of the Civil Service Reform Act of 1978, Congress made clear that OPM actions were subject to the requirements for rulemaking set forth in § 553. *See Id.* §§ 1103(b), 1105 (Supp. IV 1980). The initial inquiry is therefore whether any of the challenged OPM actions constitute rulemaking.

Two OPM actions are alleged to be rulemaking. Plaintiffs first contend that rulemaking took place when changes were made in methodology for determining the COLA. These changes occurred after the Civil Service Reform Act made the APA applicable to OPM actions. Defendants do not deny the fact that some changes in methodology took place. Rather, it is claimed the modifications were slight in degree and did not change the basic methodology in a significant manner. The court notes that the APA defines rulemaking as "agency process for formulating, *amending*, or repealing a rule." *Id.* § 551(5) (1976) (emphasis added). A rule is defined as follows:

> the whole or a part of *an agency statement of* general or particular applicability and *future effect designed to implement*; interpret, *or prescribe law* or policy or describing the organization, procedure or practice requirements of an agency and *includes* the approval or *prescription for the future of rates, wages*, corporate *or financial structures or reorganizations* thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, *or practices bearing on any of the foregoing.*

*Id.* § 551(4) (emphasis added). OPM admits criteria in the COLA methodology were modified as a result of calculations based on more recent data; changes in consumer preference; and changes in sociological patterns. *See* Defendants' Response to Plaintiffs' Motion for Summary Judgment, docket # 81 at 18. These changes can be characterized as legislation on an administrative level. They were intended to have a future effect on federal employees receiving COLA compensation in the Anchorage area. In addition, the court has no problem perceiving the changes as amendments to a prescription for wage rates. Based on the foregoing, OPM's modifications of the COLA methodology constitute rulemaking. *See Batterton v. Marshall*, 648 F.2d 694, 704–05 (D.C.Cir.1980).

Notwithstanding this rulemaking, OPM argues such action was not subject to notice and comment requirements of § 553 by virtue of an exception recognized when agency action involves interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice. *See* 5 U.S.C. § 553(b)(3)(A) (1976). The modifications at issue are not interpretative. They were not meant to explain an existing rule. *See Batterton v. Marshall*, 648 F.2d at 704; *Curlott v. Hampton*, 438 F.Supp. at 509, n.2, *rev'd on other grounds*, 598 F.2d 1175 (9th Cir. 1979). They also do not represent merely an agency's view on interpretation of a statute. *See American President Lines, Ltd. v. Federal Maritime Commission*, 316 F.2d 419, 421 (D.C.Cir.1963). Nor may the changes be characterized as general statements of policy, in light of the fact that the new procedure does not reflect a future intention of the agency. *See Batterton v. Marshall*, 648 F.2d at 706. Finally, amendments to the COLA methodology do not fall within the ambit of rules of agency organization, procedure or practice. While the changes may be characterized as reflecting internal procedure of OPM, the primary consideration is that the agency action affects the rights and interests of parties outside the agency. *See Id.* at 707–08.

Plaintiffs also contend 1980 and 1981 formulations of the COLA for the Anchorage allowance area constitute separate instances of rulemaking. The court has little trouble in concluding these actions were rulemaking in accordance with 5 U.S.C.

§ 551(5) (1976). *See generally Long Island Railroad Co. v. United States*, 318 F.Supp. 490, 495 (E.D.N.Y.1970) (agency's setting of rates to compensate railroads for use of freight cars held to be rulemaking).

The preceding analysis shows that OPM was involved in rulemaking, and such actions took place after the agency became subject to notice and comment requirements of the APA. It is further evident from the record that OPM has not complied with the requirements of 5 U.S.C. § 553(b) (1976). No notice of any proposed rulemaking was ever published in the Federal Register relating to either changes in OPM's methodology for determining the COLA, or reductions in the COLA rate for the Anchorage allowance area. As a result of this omission, interested persons were not provided an opportunity to participate in the process as required by § 553(c).

### E. Remand to OPM

The Ninth Circuit has long recognized that, in general, administrative rules are void and ineffective if subject to the APA and found not to be in compliance with the statute's notice and comment procedures. *See Hotch v. United States*, 212 F.2d 280, 283 (9th Cir. 1954). *See also Western Oil and Gas Association v. United States Environmental Protection Agency*, 633 F.2d 803, 812–13 (9th Cir. 1980). Under certain circumstances, however, a court may allow the challenged agency action to remain in effect. *See id.* at 813. In this case, the COLA rates for 1980 and 1981 shall remain in effect. This court has no power to reinstate the COLA rate at twenty-five percent as plaintiffs suggest; nor have plaintiffs cited any authority to support their proposition. Any pecuniary award which might ultimately accrue to plaintiffs may be recovered in accordance with the Back Pay Act after all proceedings in this case have terminated. *See* 5 U.S.C. § 5596(b) (1976).[21]

■ The appropriate remedy when an agency improperly fails to use notice and comment procedures is a remand to the agency for reconsideration consistent with § 553 of the APA. *See Western Oil and Gas Association v. United States Environmental Protection Agency*, 633 F.2d at 813; *New Jersey Department of Environmental Protection v. United States Environmental Protection Agency*, 626 F.2d 1038, 1050 (D.C.Cir.1980); *American Frozen Food Institute v. Train*, 539 F.2d 107, 135 (D.C.Cir. 1976). Hence, proceedings in this case are remanded to OPM with the instruction to comply with 5 U.S.C. § 553. Rules promulgated by OPM since the effective date of the Civil Service Reform Act of 1978, including changes in the COLA methodology and rate reductions for the Anchorage allowance area, are subject to notice and comment requirements of § 553.

### F. Payment of a Post Differential

■ Plaintiffs' last argument in support of their summary judgment motion alleges they are entitled to receive post differentials to make up for COLA reductions. *See generally* 5 U.S.C. § 5941(a); Executive Order No. 10,000, 3 C.F.R. 795 (1943–48 Compilation), *reprinted in* 5 U.S.C. § 5941, sec. 203 at 555 (1976). The court notes that the Anchorage area has never been designated to receive a differential. *See* 5 C.F.R. Part 591, app. B of subpart B, p. 330 (1982). The criteria which OPM must use in determining places for a post differential are listed in section 203 of the Executive Order. As previously mentioned in this memorandum, an agency has presumed expertise in interpreting executive orders charged to its administration. The agency's interpretation must be reviewed with great deference. *See Udall v. Tallman*, 380 U.S. at 16–17, 85 S.Ct. at 801–802; *Kester v. Campbell*, 652 F.2d at 15. OPM's determination to not designate the Anchorage area for a post differential was reasonable. The court will not substitute its judgment for that of the agency. *See Citizens to Preserve Overton*

---

**21.** The Back Pay Act is available to provide complete relief to plaintiffs should it ultimately be determined that COLA benefits were wrong- fully denied. *Curlott v. Campbell*, 598 F.2d 1175, 1181 (9th Cir. 1979).

*Park, Inc. v. Volpe*, 401 U.S. at 416, 91 S.Ct. at 823.

Accordingly, IT IS ORDERED:

1) THAT summary judgment is granted defendants to the effect that the COLA methodology is not in violation of 5 U.S.C. § 706(2)(A).

2) THAT summary judgment is granted defendants to the effect that the COLA methodology is not in violation of 5 U.S.C. § 5301.

3) THAT summary judgment is granted defendants to the effect that OPM was not in violation of law for failure to promulgate regulations relating to the COLA program.

4) THAT summary judgment is granted plaintiffs to the effect that changes in COLA methodology occurring since the effective date of the Civil Service Reform Act of 1978, and reductions in the COLA rate for the Anchorage allowance area in 1980 and 1981, are in violation of 5 U.S.C. § 553.

5) THAT administrative proceedings be remanded to OPM concerning changes in COLA methodology occurring since the effective date of the Civil Service Reform Act of 1978, and reductions in the COLA rate for the Anchorage allowance area in 1980 and 1981, so that procedures consistent with 5 U.S.C. § 553 may take place.

6) THAT all injunctive relief requested by plaintiffs is denied.

7) THAT the declaratory relief requested by plaintiffs is denied.

8) THAT summary judgment is granted defendants to the effect that plaintiffs are not entitled to receive differential compensation.